HELEN PLACHTE et al., Appellants, v. BANCROFT INC., Respondent.

First Department, April 30, 1957.

*Edward A. Lipton* for appellants.

*Sidney J. Loeb* of counsel (*Emanuel Morgenbesser*, attorney), for respondent.

BREITEL, J. Plaintiffs, in a personal injury negligence action, contend that rule V of the New York County Supreme Court Trial Term Rules, adopted by this court in 1949, is unconstitutional. The rule provides for preference in the trial of actions, and although the verified pleadings seem to indicate that plaintiffs would be able to qualify for a preference under the rule, they prefer not to comply with its requirements and urge the invalidity of the rule. Indeed, they have refused to comply with the rule, despite several opportunities.

The burden of plaintiffs' position is that by preferring large numbers of personal injury cases, which, in the court's judgment, are properly advanced in the Supreme Court for trial, the non-preferred causes are indefinitely postponed. This occurs, they say, because of the seemingly endless advance for trial of new issues entitled to and receiving preference for trial under the rule. There is no doubt that for the foreseeable future the prospect for non-preferred causes is exactly what plaintiffs assert. The Trial Term, which denied plaintiffs' motion to direct the clerk to set their case on the calendar so that it would be reached for trial, so found, but nevertheless sustained the rule as valid. In denying the motion the Trial Term granted plaintiffs leave to have their application reheard on the merits if proper application be made in accordance with the rule.

The order should be affirmed.

It is ancient and undisputed law that courts have an inherent power over the control of their calendars, and the disposition of business before them, including the order in which disposition will be made of that business. (*Landis* v. *North Amer. Co.*, 299 U. S. 248, 254; accord, *American Life Ins. Co.* v. *Stewart*, 300 U. S. 203, 215; *Morse* v. *Press Pub. Co.*, 71 App. Div. 351, 357.) Moreover, this power exists independently of statute. (*Riglander* v. *Star Co.*, 98 App. Div. 101, affd. 181 N. Y. 531; *Clarke* v. *Eighth Ave. R. R. Co.*, 114 Misc. 707; *Reinertsen* v. *Erie R. R. Co.*, 66 Misc. 229; *Smith* v. *Keepers*, 66 How. Prac. 474; 88 C. J. S., Trial, § 33.)

Indeed, a statute which would impose a mandate upon the court in the otherwise discretionary handling of time of trial is unconstitutional. (*Riglander* v. *Star Co.*, supra; accord, *Woerner* v. *Star Co.*, 107 App. Div. 248; *People* v. *McClellan*, 56 Misc. 123.)

Even before the modern day glut of court calendars there was widespread occasion for establishing preferences among causes, and almost every State in the Union has made provision therefor by statute or rule. (88 C. J. S., Trial, § 31 *et seq.*, *supra*, and the many cases cited; 53 Am. Jur., Trial, §§ 5, 6.)

The basis for such preference among causes has ranged from those based on the expected shortness of the trial (*Weiss* v. *Morrell,* 7 Misc. 539; *Guerineau* v. *Weil,* 8 Misc. 94; *Buell* v. *Hollins,* 16 Misc. 551; *Jensen* v. *Fricke,* 133 Ill. 171; *Louisville, New Albany & Chicago Ry. Co.* v. *Wallace,* 136 Ill. 87) to judicial predetermination of inadequacy of defense or dilatory motive (*Wallbaum* v. *Haskin,* 49 Ill. 313; *Merchants' Nat. Bank* v. *Glendon Co.,* 120 Mass. 97), coupled with classification of causes based on their nature or the public character of the litigants.

In this State, following the 1848 Code of Procedure, the effort was made to develop a statutory system of preferences, but without eliminating the ancient and inherent power of the courts to establish preference by general or special order (see, e.g. Code Civ. Pro., § 791 *et seq.,* and especially § 791, subd. 10). There is no need to develop the history of that effort. It was excellently recorded by Mr. Justice GEORGE L. INGRAHAM in *Morse* v. *Press Pub. Co.* (71 App. Div. 351, *supra*). But the effort was hardly successful for the reasons explained in that opinion. In sum, the number of legislatively created preferences became so great as to clog the calendars of more necessitous cases for which there was no statutory preference. As court calendars became more crowded, particularly with personal injury cases, the scope and effect of preferences for trial, of course, became more significant. The courts by decision and rule sought to correct the incongruity. When the Legislature, in 1904, tried to make the statutory preferences mandatory, the act was declared unconstitutional (*Riglander* v. *Star Co.,* 98 App. Div. 101, affd. 181 N. Y. 531, *supra*).

By 1940 it was apparent that the statutory preference system was basically a failure, and the court rule system promised better control of a chronic problem. In its report for that year the Judicial Council said of this shift: "Pursuant to the power thus granted, numerous preferences have been created which are far more effective than those enumerated in section 138 of the Civil Practice Act." (Sixth Annual Report of N. Y. Judicial Council, 1940, pp. 267, 281.)* Section 138 was, of course, the successor statute to section 791 of the Code of Civil Procedure. The power, to which the council referred, is that now contained in section 85 of the Judiciary Law, which section confers on each appellate division broad power by rule to make up calendars, classify actions, and generally provide rules "as

---

* See 6 Carmody-Wait on N. Y. Practice, p. 256 *et seq.*; but cf. 2 Bender on N. Y. Practice, p. 296.

it may deem necessary generally to promote the efficient transaction of business and the orderly administration of justice therein." As seen earlier, the inherent power of the courts antecedes this statutory enactment, which, therefore, is hardly more than a codification.

In accordance with the recommendations of the Judicial Council, the Legislature, in 1940, amended drastically section 138 of the Civil Practice Act, and enacted a new section 140, which reads simply: "The justices of the appellate division of the supreme court shall have the power to adopt, amend and rescind rules regulating preferences in the trial or hearing of civil causes." Pursuant to this section, rule 151 of the Rules of Civil Practice was adopted. To make clear that this rule did not limit the powers of the separate appellate divisions, pursuant to section 85 of the Judiciary Law, rule 151 was amended, in 1949, to provide in its opening paragraph: "Except as may otherwise be provided by the rule of any appellate division, civil causes shall be tried in the order in which notes of issue have been filed."

This, then, is the statutory and decisional history in the context of which this court adopted rule V of the New York County Supreme Court Trial Term Rules, and rule IV of the Bronx County Supreme Court Trial and Special Term Rules.

That the power exists in the court to provide for preferences among causes can hardly be questioned. Before there were statutes, the power existed. When the statutes were used to develop preferences further, in this State and many others as well, the statutory movement was never interpreted as restrictive of the inherent judicial power, as indeed it could not be. But the existence of the power is not the only aspect revealed by the decisional and statutory history. There also appear constantly changing method and experimentation to resolve a stubborn chronic problem of trial delay. More and more, the granting and denial of preferences in individual cases or assignment of cases to preferred or classified calendars were associated with efforts at solution. Thus arose and later disappeared, the short cause calendar. Then arose the commercial calendar, and more recently the nonjury calendars. The problem not being solved, new and further methods and experimentation were indicated.

Given the power and the existence of the problem, the duty is mandated on the courts. The only question that remains is the reasonableness and the fairness with which that duty has been exercised. The absence of any direct precedent for rule V is obvious. If there had been such a precedent it would have

either provided already the best control for the problem or it would have proven a failure.

The portion of rule V to which plaintiffs take exception is subdivision 5. It provides generally for a preference in actions to recover for personal injuries where the injuries result in " permanent or protracted disability ", or in wrongful death actions brought under section 130 of the Decedent Estate Law. The effect of a preference based on these circumstances is to advance for trial those cases pending in the Supreme Court in which the likelihood of recovery, if plaintiff is successful, will approximate or exceed the monetary jurisdiction of courts of limited monetary jurisdiction in the county. Thus, as a matter of experience, and it was so anticipated, the bulk of the personal injury cases pending in the Supreme Court qualified for the preference, and those cases for which alternative jurisdiction exists in other courts of limited monetary jurisdiction are denied the preference.

When rule V was adopted the fact was that there were more personal injury cases being received in the Supreme Court for trial than could be handled on a current basis. Of these, a large number — by far the greatest number — were cases of such magnitude that no court other than the Supreme Court had jurisdiction to try them. But, a great number of cases, although the smaller portion, were, experience showed, brought in the Supreme Court, not because there were not other courts of jurisdiction that could entertain them, but because by bringing such actions in the Supreme Court, with its unlimited monetary jurisdiction, the summons in the action constituted a higher asking figure looking toward prospective settlement. Perhaps, if our court system, and its many litigants, could afford this extra load that had another judicial place to which it could go, the practice of bringing such cases into a higher court would not be objectionable.* The fact was that this situation was a grave injustice to those litigants with cases that could go nowhere else except to the Supreme Court.

Rule V, in principle, provides no more than a judicial screening of necessitous cases which have no jurisdictional place except in the Supreme Court, from those cases which have recourse to other courts, not so delayed in calendar. It is not because a case " small in the amount of money involved " is

---

* Although, for many years, first occurring in the Code of Civil Procedure, costs have been denied to plaintiffs in this city, who bring their actions in the Supreme Court, when other courts had jurisdiction. (See Civ. Prac. Act, § 1474; Code Civ. Pro., § 3228, subd. 5, as added by L. 1904, ch. 557, and amd. by L. 1910, ch. 574.)

entitled to less justice than one involving a larger sum. So, rule V also confers no preference in cases where plaintiff is not a resident of the county, for he too has another, less crowded place, to go. The purpose and the effect of the rule is no different, in principle, than seeing that a limited supply of food is distributed to the foodless, while those who have other supplies are told either to wait until the hungry are fed or to resort to their available alternatives.*

In truth, courts are not dealing with cases all crowding for trial. Many are brought with the prospect of settlement — and sometimes with that prospect alone. Many cases brought in the Supreme Court, otherwise triable in courts of limited jurisdiction, are instituted there in order to bring about a negotiated settlement, in the rotunda of the court, or in the informal setting of a pretrial hearing, at what plaintiffs hope will be at higher prices than if attempted in a limited court. In classifying such cases, by calendar, by preference, or by denial of preference, the court is not denying its jurisdiction to litigants but exercising its proper responsibility of traffic control.

Actually, rule V has been quite successful. The intake of new cases and the disposition of old ones have at least been brought into balance, although a backlog of delay still persists. No cases, known to this court, have been excluded from a preference which should have received it. This is established by what has happened to cases transferred to other courts as a result of the denial of a rule V preference. This is also evident from the few instances in which this court, out of caution, has disagreed with Trial Term, and granted a preference which had been denied. Even, in this very case, if the verified complaint and the attorney's affidavit are accurate and can be supported by a medical affidavit, a preference under rule V is likely. This, as noted earlier, they have refused to do. As a consequence, plaintiffs actually have no footing to complain against rule V or its constitutionality.

Further indication of the success of rule V is found in the following. In June, 1956, there was a 42-month delay in the personal injury jury calendar in the Supreme Court in New York County. By March, 1957, this delay had dropped to 26 months.

---

* Thus, plaintiffs' heavy reliance on *Alexander* v. *Bennett* (60 N. Y. 204) is beside the point. That case involved a statutory effort to mandate a transfer of certain cases from the Supreme Court to lesser courts. This was clearly unconstitutional because of the Supreme Court's general original jurisdiction. Rule V does not exclude anyone from the Supreme Court; but the court has a duty to advance relief to those without alternative first, and let those with reasonable alternative wait on those without.

Of course, it would over-simplify matters to regard rule V as solely responsible for this improvement, but it, undoubtedly, was a large contributing factor. Assuming the same rate of disposition hereafter, it may not now be concluded that causes not preferred under rule V may never be tried. Another way of examining this development is to consider the number of causes on the law calendar awaiting trial in the Supreme Court in New York County. On January 1, 1949, that number was 14,399. On April 1, 1957, the number had dropped to 2,767. Of course, in the meantime, in addition to rule V, this court adopted a special rule respecting calendar practice. This rule has also had considerable effect, but, it, too, is simply another species of effort exerted by the courts in seeking to solve the problem of calendar delay. Like rule V, it, too, stems from the power and the responsibility of the court to control by preference and classification, through judicious and judicial selection, the trial of cases, and thereby to expedite calendars.

To the argument that judicial predetermination is involved in applying rule V there is a simple answer. All discretionary preference or classification provisions, by statute or rule, always did, as by their very nature they must. (*Riglander* v. *Star Co.,* 98 App. Div. 101, affd. 181 N. Y. 531, *supra*; *Merchants' Nat. Bank* v. *Glendon Co.,* 120 Mass. 97, *supra*; *Jenson* v. *Fricke,* 133 Ill. 171, *supra*.) So do so many other exercises of judicial discretion in the granting or denial of ancillary or provisional remedies, general calendar dispositions, or in the conduct of the trial itself. This is a risk of a judicial system, for which there is no better alternative.

Accordingly, the order denying plaintiffs' motion to direct the clerk should be affirmed, with $20 costs to respondent.

PECK, P. J., FRANK and VALENTE, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to the respondent.