Joseph F. G-agliardi, J.
Plaintiff moves for reargument of a decision rendered by another Justice of this court which denied an application for a general preference. Motion disposed of in accordance with the following opinion.
This motion brings into focus several interesting and important questions concerning the efficient distribution of judicial manpower and the orderly transfers of matters not properly before the Supreme Court. Consequently, the court shall set forth the factual background of the within matter and analyze the various issues raised by the present motion.
Plaintiff, a resident of Bronx County, brings this action for personal injuries allegedly sustained on March 19, 1967 in the Borough of Manhattan. The individual defendants, who are residents of the State of Wisconsin, are the owner and operator of the motor vehicle which allegedly struck plaintiff. The corporate defendant is a domestic corporation having a place of business in the County of Westchester and venue is predicated upon its presence here.
The action was commenced in February, 1970 pursuant to an order of this court authorizing substituted service upon the individual defendants. All defendants have appeared and answered. The complaint alleges two causes of action, one against the individual defendants jointly and one against the corporate defendant, and prays for $80,000 compensatory damages in each instance. Various Justices of this court have passed upon certain facets of this case. On April 22, 1970 this court issued an order amending the title of the action and regulating the examinations before trial. On July 30, 1970 an application for a general preference was denied. On June 25, 1971 and July 12, 1971 motions regarding applications for discovery and inspection were decided. Accordingly, within an 18-month period (February, 1970 — July, 1971) five different Justices of 'this court were called upon to decide various applications concerning some procedural aspects of this case.
In his application for a general preference, plaintiff claimed a preference due to severe and protracted injuries. The application was unopposed and, as indicated earlier, was denied. In the motion for reargument, which is really a motion to renew, plaintiff once again claims serious personal injuries and, for the first time, requests a preference on the ground that the County Court lacks jurisdiction over the classes of persons sued, specifically the individual nonresident defendants. The motion is opposed by the latter parties, who consent to a transfer to the County Court and agree to waive any jurisdictional *199 objections they otherwise would be entitled to raise in that court.
As a procedural matter, the initial motion having been decided on default, the within application is not properly referable (CPLR 2221). Plaintiff implicitly recognizes this fact and has not requested referral of the motion. Plaintiff initially asserts that his injuries would result in an award of damages in excess of the $10,000 monetary jurisdiction of the County -Court (N. Y. Const., art. VI, § 11, subd. a; Judiciary Law, § 190, subd. 5). However, on this motion plaintiff merely realleges his claim of injuries as set forth in haec verba in the bill of particulars, which are the same claims made on the original motion. The medical reports submitted with the original application are insufficient to support plaintiff’s contention that an award will exceed the $10,000 County Court monetary limitation. Consequently, that part of the motion for a general preference predicated upon the claim of serious injuries is denied.
As a practical matter the denial of a general preference means that the case will never be tried in the Supreme Court (see 4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3403.04). In the ordinary course of events the parties would then stipulate to a reduction in damages and the transfer to the County Court (CPLR 325, subd. [c]). However, plaintiff, either by way of caution (since subject matter jurisdiction may not be vested in a court by consent [Robinson v. Oceanic Steam Nav. Co., 112 N. Y. 315, 324]), or in the earnest but erroneous belief that the matter properly belongs in the Supreme 'Court, has alternatively requested a preference on jurisdictional grounds.
The latter issue raises two important problems regarding the orderly transfer of cases from the Supreme Court to the County Court. First, is the consent of the individual defendants herein sufficient to waive jurisdictional objections? Secondly, is the consent of the plaintiff required (equating his position on this motion with nonconsent) so as to permit a transfer? The court shall answer these inquiries seriatim.
Jurisdiction of the County Court is delineated in sections 190 and 190-a of the Judiciary Law. Insofar as is pertinent here the County Court in negligence actions has jurisdiction of individual defendants where all such defendants reside in the county (Judiciary Law, § 190, subd. 3). The corporate defendant herein allegedly has a place of business in Westchester County and is therefore deemed a resident of said county for jurisdictional purposes (Judiciary Law, § 190-a). Consequently, it is clear that the County Court of Westchester has. *200 subject matter jurisdiction over all classes of defendants sued herein (Murphy v. Itcha Realty Corp., N. Y. L. J., May 21,1971, p. 19, col. 6 [Sup. Ct., Westchester County]). In the cited case this court discussed at length the constitutional and statutory predicates of subject matter jurisdiction of the County Court and held that a domestic corporation, not a resident of Westchester County, could properly consent to a transfer to the County Court of Westchester, since it merely waived its power to assert in personam jurisdictional objections (also see Martin v. Farrell, 47 Misc 2d 126; CPLR 3211, subd. [e]). The court adheres to the conclusion reached in Murphy, which does not require further elaboration here, and holds that the issue of subject matter jurisdiction does not arise at bar. Accordingly, the individual defendants may properly consent to a transfer of the within matter and thereby waive their rights to assert personal jurisdictional objections.
The second problem, regarding consent of the plaintiff, raises ancillary issues not capable of easy resolution.
Prior to the revision of this State’s Constitution in 1962 and before the advent of the CPLR in 1963, written consent of the plaintiff was required to authorize transfers from the Supreme Court to inferior courts (Civ. Prac. Act, § 110-b; Martirano v. Valger, 19 A D 2d 544 [2d Dept.]). However, in 1962 the Constitution was changed and in pertinent part provided (art. VI, § 19, subd. a): “ The supreme court may transfer any action or proceeding, except one over which it shall have exclusive jurisdiction which does not depend upon the monetary amount sought, to any other court having jurisdiction of the subject matter within the judicial department provided that such other court has jurisdiction over the classes of persons named as parties.”
Subdivision a of the cited provision (as well as several other subdivisions in section 19) goes on to provide that “ as may be provided by law” certain transfers may or may not occur depending upon various factors such as the promotion of justice. Consequently, CPLR 325 was enacted and is designed to implement the constitutional authority. The statute is more restrictively worded than the quoted provision of the Constitution and, for example, it requires consent of all parties for transfers down, prior motions in the Supreme Court for transfers up, prior consent of the Surrogate in decedent estate matters, etc. CPLR 325 was drafted prior to the revision of the State Constitution in 1962 “ and in some respects is inconsistent with” section 19 of article VT thereof (McLaughlin, Practice Com *201 mentary to CPLR 325, McKinney’s Cons. Laws of N. Y., Book 7B, p. 623; 44 St. John’s L. Rev. 770 at N. 63 [1970]). The cases, therefore, have been uniform in holding the statute to be incompatible with the broad authority conferred by the Constitution and is superseded to the extent inconsistent therewith; i.e., the power to transfer cases down is self-executing (American Mut. Liab. Ins. Co. v. Bova, 32 A D 2d 527 [1st Dept.]; Turntables, Inc. v. M. B. Plastics Corp., 31 A D 2d 792 [1st Dept.] Trussell v. Strongo, 29 A D 2d 851 [1st Dept.]; Garland v. Raunheim, 29 A D 2d 383 [1st Dept.]; Midtown Commercial Corp. v. Kelner, 29 A D 2d 349 [1st Dept.]; Kemper v. Transamerica Ins. Co., 61 Misc 2d 7; Morse v. Penzimer, 58 Misc 2d 156; Matter of Meister, 55 Misc 2d 1050; Hesse v. Hrubsa, 55 Misc 2d 610, revd. other grounds and app. dsmd. 57 Misc 2d 913 [App. Term, 2d Dept.]; Frankel Assoc. v. Dun & Bradstreet, 45 Misc 2d 607; Stevens v. M. V. A. I. Corp., 41 Misc 2d 1013; see Wagner v. Wagner, 25 A D 2d 796 [3d Dept.]). Thus, it has been held that, contrary to former CPLR 325 (subd. [d]) (now subd. [e]), neither a motion nor prior consent of the Surrogate is required to transfer a matter to the Surrogate’s Court (Garland v. Raunheim, supra, Matter of Meister, supra); that an inferior court may transfer a matter to the Supreme Court although no motion was made in the latter forum as required by CPLR 325 (subd. [b]) (Kemper v. Transamerica Ins., Co., supra); and that the Supreme Court may transfer a matter to an inferior court without consent of the parties despite the requirement of the CPLR 325 (subd. [c]) (Midtown Commercial Corp. v. Kelner, supra, Trussell v. Strongo, supra, Morse v. Penzimer, supra, Frankel Assoc. v. Dun & Bradstreet, supra). As the Appellate Division, First Department, aptly stated, 11 restricting the cases in the Supreme Court to those properly brought there is a material factor in efficient calendar administration ” (Midtown Commercial Corp. v. Kelner, 29 A D 2d 349, 351, supra). Secondary authority agree that the relevant provisions of CPLR 325 have been superseded by the 1962 constitutional revision (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., pars. 325.04, 325.16, 325.17, 325.19a; McLaughlin, Supplementary Practice Commentary to CPLR 325, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR [in 1970 Supp., pp. 266-269]). In sum, the Supreme Court possesses the inherent power to transfer a case not within its exclusive jurisdiction to any court within its judicial department having jurisdiction of the subject matter and the classes of persons sued.
*202 Indeed, the Legislature has recently enacted provisions expanding County Court jurisdiction to include foreign corporations (L. 1971, ch. 11 [amdg. Judiciary Law, §§ 190 and 190-a]) and in providing for orderly transfers of matters from the Supreme Court of Westchester to local inferior courts (L. 1970, ch. 552 [adding UJCA, § 214]).
Nonetheless, a further problem arises herein by the enactment of an amendment in 1968 to CPLE 325 (L. 1968, ch. 502) which added a new subdivision (d). This provision authorizes transfers from the Supreme Court to the County Court without consent of the parties where the Appellate Division by rule so provides. The section further provides that, if such a transfer is made, the monetary limitation of the transferring court controls. This is in contradiction to CPLE 325 (subd. [c]), which requires a reduction of the damages demanded in order to obtain a transfer on consent. The purpose of CPLE 325 (subd. [d]) is “ to allow the Supreme Court, pursuant to Appellate Division rule, to transfer pending cases to lower courts in those judicial departments where the calendars of the higher courts are so congested as to interfere with the efficient administration of justice therein, but where the lower court calendars are clear enough to absorb these extra loads ” (Fourteenth Annual Eeport of N.Y. Judicial Conference, p. 24 [1969]). However, as Professor Siegel observes, in the absence of an implementing rule a transfer down 1 ‘ would not dispense with the monetary limit of the lower court ” (Siegel, Practice Commentary to section 214 of the Uniform Justice Ct. Act, McKinney’s Cons. Laws of N. Y., Book 29A., Pt. 2 [Judiciary Law] in 1971-72 Supp., p. 87). Similarly, Professor McLaughlin sagely notes “it is clear, therefore, that a court has the inherent constitutional power to transfer an action to a lower court, and that, until legislation is passed, the lower court may grant the plaintiff only the monetary damages within its jurisdiction ” (McLaughlin, Supplementary Practice Commentary to CPLE 325, McKinney’s Cons. Laws of N. Y., Book 7B [in 1971-72 Supp., p. 269]).
Eules implementing CPLE 325 (subd. [d]) have been enacted by the Appellate Divisions, Third and Fourth Departments (22 NYCEE 861.18 [3d Dept.]; 22 NYCEE 1024.20 [4th Dept.]). The apparent reason for the absence of appellate orders in the First and Second Departments (the latter embraces the County of Westchester) is the significant caseload existing in the *203 inferior courts of said departments. Nonetheless, as is cogently pointed out by Messrs. W einstein-Ko rn-Miller, CPLR 325 (subd. [d]) is itself “ gratuitous ” if we assume, as the cases uniformly hold, that the Supreme Court possesses constitutional power pursuant to subdivision a of section 19 of article VI of the Constitution to transfer cases without consent (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 325.19a, p. 3-385). Therefore, as Professor Siegel indicates in his Practice Commentary to the liberal transfer provision of the Uniform Justice Court Act, the mere existence of CPLR 325 (subd. [d]) does not preclude transfers without consent (Siegel, Practice Commentary to section 214 of the Uniform Justice Ct. Act, McKinney’s Cons. Laws of N. Y. [Judiciary Law] Book 29A, Pt. 2 [in 1971-72 Supp., pp. 87-88]). Consequently, the court is of the opinion that the within matter may be transferred to the County Court pursuant to inherent constitutional authority, despite plaintiff’s lack of consent.
Two ancillary problems must be considered regarding referral of this case to the County Court. First, it appears, and the court so holds, that upon a transfer without plaintiff’s consent the remedial provisions of CPLR 326, especially subdivision (b), apply and the matter is treated as if it had been commenced initially in the transferee court (see Kemper v. Transamerica Ins. Co., 61 Misc 2d 7, supra; 22 NYCRR 1024.20 [b] [4th Dept.]). Secondly, the monetary jurisdiction of the County Court must be deemed applicable as provided for in this State’s Constitution (N. Y. Const., art. VI, § 11, subd. a), and by statute (Judiciary Law, § 190, subd. 5), and case law interpretation (Martin v. Farrell, 47 Misc 2d 126; see Hesse v. Hrubsa, 55 Misc 2d 610, revd. on other grounds and app. dsmd. 57 Misc 2d 913 [App. Term, 2d Dept.], supra).
The latter holding, in turn, raises vexatious questions concerning the equal treatment of litigants throughout New York State. Article VI (§ 19, subd. k) of the State Constitution authorizes the Legislature to enact statutes eliminating monetary jurisdictional limitations in transfer matters. The Legislature on two occasions has successfully exercised its authority and modified such monetary requisites concerning transfers to Town, Village and Justice Courts in Westchester County (UJCA, § 214; McKinney’s Cons. Laws of N. Y. [Judiciary Law], Book 29A, Pt. 2 [in 1971-72 Supp., p. 87]) and by passage *204 of CPLR 325 (subd. [d]). However, the transfer herein is pursuant to constitutional authority and not CPLR 325 (subd. [d]). Consequently, “ transfers down within those departments whose appellate divisions have not adopted an implementing rule or order would not dispense with the monetary limitation of the lower court ” (Siegel, Practice Commentary to section 214 of the Uniform Justice Ct. Act, McKinney’s Cons. Laws of N. Y. [Judiciary Law], Book 29A, Pt. 2 [in 1971-72 Supp., p. 87]). The court has no authority to judicially abrogate the constitutionally mandated monetary limitations of the County Court (Martin v. Farrell, 47 Misc 2d 126, supra) but recognizes that the design of CPLR 325 (subd. [d]) is itself subject to constitutional attack, since litigants whose cases are transferred down in the First and Second Departments are treated unequally with litigants similarly situated in the Third and Fourth Departments. Such challenge must of necessity be predicated upon the arbitrary existence of special rules vis-a-vis calendar congestion in the respective judicial departments, but the possibility of success in this regard must be considered unlikely (Matter of Pratt v. Tofany [2d Dept.], 37 A D 2d 854). In any event, it is significant that a plaintiff in the Third and Fourth Departments is never aggrieved in a monetary sense if his case is transferred down, since the monetary jurisdictional limits of the transferee court are inapplicable (Kloc v. Cissell, 31 A D 2d 885 [4th Dept.]). It has been suggested that one obvious remedy available to cure this curious distinction in litigant treatment is to enact legislation which mandates the promulgation of appellate rules (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 325.19a). However, similar legislation was enacted in 1965 (S. 2319, Pr. 3894), only to be vetoed by the Governor on the ground that litigants would seek to commence all actions in the Supreme Court and thereby increase that court’s calendar congestion (McLaughlin, Supplementary Practice Commentary to CPLR 325, McKinney’s Cons. Laws of N. Y., Book 7B [in 1970 Supp. at 268-269]).* *205 Of course, the Governor’s argument is no longer of sufficient import in light of CPLR 325 (subd. [d]), especially if the First and Second Departments promulgate rules thereunder.
The court is inclined to the view that neither approach serves the best interests of the innocent victims who desire speedy trials of their claims and redress for wrongs visited upon them; nor is either method suited to the efficient administration of judicial manpower or justice. The present scheme creates confusion and unequal treatment of litigants, which serves to bring both the judiciary and lawmaker into disrepute. As the cases indicate, CPLR 325 is virtually superfluous and in dire need of recasting. The State Constitution regarding transfers down is self-executing, and the present guidelines for such transfers are woefully inadequate, erroneous, unwarranted and obfuscatory. The better procedure surely is to accord uniform treatment to all litigants in this State and not unequal treatment predicated upon the mere happenstance of residency (or venue).
The court has considered these problems at length due to the magnitude of their importance upon the orderly administration of calendar practice in the Supreme Court. The within matter has caused the utilization of judicial manpower on six separate occasions for a case not properly brought in the Supreme Court. Plaintiff’s counsel is not to be castigated, however, for he has acted admirably in attempting to serve the interests of his client. Nonetheless, this case is merely one example of hundreds akin thereto whereby Judge and lawyer alike expend energies in a useless effort to facilitate the position of a case which does not belong in the Supreme Court. Accordingly, the motion for reargument is granted and upon reargument the motion is denied. The matter is transferred to the County Court of Westchester pursuant to constitutional authority, subject to the provisions of CPLR 326 and the monetary jurisdictional limitations applicable to said court.
Submit order on notice which order is to provide for service of a copy thereof upon the Calendar Clerk of the County Court of Westchester within five days after entry thereof.

 These arguments were discussed by the Committee on the Judiciary to the Temporary Commission on the Constitutional Convention in 1967 (see Report of Temporary State Comm, on Constitutional Convention, the Judiciary, vol. 12, pp. 157-159 [March 31, 1967 (pamphlet) ]). The proposed constitution, which was not ratified by the electorate, would have abolished the County Court and vested in the Legislature sole discretion regarding transfers of eases (see proposed Constitution, art. V, § 15 [b]; § 16, 12 Proceedings of the Constitutional Convention of iState of New York 16 [1967]).