Joseph F. Gagliardi, J.
THE FACTS
On July 15, 1972, on a road in Putnam County, David Weber, his wife and two infant children were traveling in his automobile when it collided with one driven by defendant. Thereafter, on January 5, 1974, Mr. Weber and his wife instituted a lawsuit against defendant in the Dutchess County Supreme Court and, subsequently, on February 23, 1975, Mr. Weber, as guardian ad litem on behalf of his two infant children and in his individual capacity, commenced another lawsuit against defendant in the same court. Both actions were consolidated by order of the court. A note of issue and statement of readiness were filed and application for a general preference made on unstated grounds. The pleadings, bills of particulars, and medical documents were submitted. On October 23, 1975, the application was denied by another Justice of this court, who directed that the consolidated action be transferred to the Dutchess County County Court upon the expiration of 90 days unless plaintiffs renewed the application. Plaintiffs have, in effect, so moved.
The complaints reveal that plaintiffs are seeking monetary recompense for personal injuries allegedly sustained in the automobile accident; five causes of action are asserted wherein Mrs. Weber asks for $50,000, the infant children $25,000 each (one cause of action), Mr. Weber seeks a total of $35,000 for loss of services (two causes of action), and requests $1,500 property damage. The note of issue contains a demand for a jury trial. The answers consist of general denials. The bills of particulars claim permanent injury to Mrs. Weber and the children. Of the medical documents submitted, only two relate to the children, the emergency room records of the Julia L. Butterfield Memorial Hospital which conclude that the infant Webers were "covered with small flecks of glass, but no significant lacerations”, and "no significant injury detected at this time”. The bill of particulars submitted in the adult Webers’ action reveals the following claims for special damages: physician services $196; hospital bills $116; six months’ *352 loss of earnings $2,400; eyeglasses $51; property damage $1,-500. The bill of particulars in the infant Webers’ action incorporates these claims for special damage by reference.
The emergency room record for Mrs. Weber contains a diagnosis of "emotional distress”. She was admitted overnight and discharged the following day. Five physician letters are annexed regarding Mrs. Weber’s claims of injury. Two letters from Dr. Tulgan, dated 1972, indicate lack of severe injury, and conclude with the finding of "essentially no disability”. Dr. Dahl finds that Mrs. Weber did not suffer an ocular disability. Dr. Brannan notes that he "cannot support a claim for [Mrs. Weber’s] disability”. Dr. Goodman’s letter of January, 1974 adds nothing.
PROCEDURAL BACKGROUND AND CLAIMS
As noted, another Justice denied the application for a general preference and directed the transfer of these actions to County Court upon the expiration of 90 days after the date of his decision. Plaintiffs move for leave to reargue said denial alleging inter alia jurisdictional problems since defendant is a nonresident of Dutchess County. There was (as presently) no opposition to the original application and, therefore, the motion is properly before me (CPLR 2221).
Plaintiffs advance several arguments to support the grant of their preference: (1) the amounts of the claims and the number of plaintiffs involved mandate that the cases be heard in the Supreme Court; (2) lack of jurisdiction over the person of the defendant; (3) denial of due process and deprivation of plaintiffs’ right to a jury trial upon the court’s predetermination of the potential amount in controversy; (4) violation of the equal protection clause since Dutchess County has not been included in Appellate Division orders pursuant to CPLR 325 (subd [d]) which would authorize the County Court to grant judgment beyond its monetary limitation; and (5) denial of access to the forum of one’s choice upon the transfer of the actions to another court.
HISTORICAL BACKGROUND — PRESENT POLICY
The Supreme Court of the State of New York has been traced back to the Supreme Court of the Colony of New York, the courts of the King’s Bench, Common Pleas and Exchequer in England (Matter of Steinway, 159 NY 250; Decker v Canz *353 overi, 256 App Div 68; Temporary State Comm on 1967 Constitutional Convention, Rep No. 12, Judiciary, p 143 [hereinafter cited as Comm Report]). In 1846, the Supreme Court, as we now know it, was formed by the consolidation of the pre-existing Supreme Court and a consolidation of the offices of Circuit Judge and Chancery Judge (id., p 141). It is a Statewide court of unlimited jurisdiction over causes of action known at common law or thereafter created, except that as to new causes of action statutorily created other courts may be granted concurrent jurisdiction (NY Const, art VI, § 7, subds [a], [c]; Judiciary Law, § 140-b; Matter of Seitz v Drogheo, 21 NY2d 181; Thrasher v United States Liab. Ins. Co., 19 NY2d 159).
The County Court goes back to the earlier Court of Common Pleas, and is first called the County Court in this State’s 1821 Constitution (Comm Report, p 176). In the civil area, and insofar as is pertinent here, the County Court is a court of limited jurisdiction (Gilbert v New York, 111 NY 544) exercising concurrent jurisdiction with that of the Supreme Court in tort cases where the damages claimed do not exceed $6,000, or, as in Dutchess County, $10,000 (NY Const, art VI, § 11, subd [a]; Judiciary Law, § 190, subds [3], [5]).
Since the two courts exercise concurrent jurisdiction over many matters the Supreme Court has, over the years, exercised judicial restraint, and ordinarily declined to act in those cases that could have been brought in the County Court (Comm Report, pp 145-146). Indeed, the writers of the 1967 report on the Judiciary for the Constitutional Convention noted (Comm Report, p 146):
"Statutory provisions and judicial rules are designed to encourage actions to be brought in the inferior courts if the action is within their jurisdiction. * * *
"In the Supreme Court for New York County, the practice has developed of placing personal injury claims that cannot be expected to bring recovery of at least $10,000 on a non-preferred calendar. No, or virtually no, cases from this calendar have ever been tried in the Supreme Court since this practice was instituted in 1949. This calendar was established to encourage litigants voluntarily to transfer their cases to inferior courts.”
Throughout the history of this State, court delay has been a problem and diverse legislation was enacted from time to time, according preferences in trial to certain types of cases *354 (Plachte v Bancroft, 3 AD2d 437, 438-439). These legislative efforts are recorded at length in Morse v Press Pub. Co. (71 App Div 351) and reflect an occurrence that prevailed in virtually every State of the union (88 CJS, Trial, §§ 31, 33; 75 Am Jur 2d, Trial, § 25). However, it was generally recognized that the power to control court calendars was vested in the courts, and an act which mandated the precise day of trial for a preferred matter was declared unconstitutional (Riglander v Star Co., 98 App Div 101, affd 181 NY 531). Thus, in Kriger v Holland Furnace Co. (12 AD2d 44, 46-47) Presiding Justice Nolan stated: "One of the powers which have always been recognized as inherent in the courts, which are protected in their existence, their powers and jurisdiction by constitutional provisions, has been their right to control the order of their business and to so conduct the same that the rights of all suitors before them may be safeguarded.”
Calendar congestion and delay have plagued the courts of this State for over a century, and in 1940, an effort was made to consolidate and simplify the procedure for obtaining preferences (Recommended Simplification of Preferences in Civil Cases, Sixth Annual Report of NY Judicial Council, 1940, p 267); and section 140 of the Civil Practice Act was amended to empower the Appellate Divisions to adopt rules regulating preferences (also, see, former Rules of Civ. Prac., rule 151). Similar statutory provisions granting such power existed and continue to exist today in sections 85 and 86 of the Judiciary Law (Bailey v Smith, 27 Misc 2d 168 [Hopkins, J.]). Indeed, CPLR 3401 mandates that the Appellate Divisions exercise their calendar authority (cf. former Rules of Civ Prac, rule 237; see Eighth Annual Report of NY Judicial Conference, 1963, p 88).
To alleviate court delay in the tort area, the Appellate Division, First Department, in 1949 adopted a general preference rule (rule V) for the Supreme Court, New York County (see Clevenger’s Practice Manual, 1949 Annual, pp 21-31 to 21-32). This rule was later extended to the Supreme Court, Bronx County, was adopted by the Supreme Court, Kings County in 1953 (rule 9) and by other courts in the Second Judicial Department. On March 1, 1962, the Appellate Division, Second Department, repealed all such rules applicable to the Supreme Courts within said department and replaced them with its own special preference rule. The Appellate Divisions, Third and Fourth Departments, also adopted simi *355 lar rules (7 Carmody-Wait 2d, NY Practice, Calendar Practice; Note of Issue, §§ 50:32-50:38).[1] The Second Department rule has been carried forward, with minor changes, into Part 674 of the Rules of the Appellate Division, Second Department (22 NYCRR Part 674).
Thus, in tort actions three kinds of cases were created for calendar purposes: specially preferred (trial preferences and statutory preferences — CPLR 3403, subd [a]; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3403.09), generally preferred (general preference) and nonpreferred. "As a practical matter the denial of a general preference means that the case will never be tried in the Supreme Court” (Haas v Scholl, 68 Misc 2d 197, 199). On the other hand, the grant of a general preference really does not prefer a case, but permits it to be placed on the general calendar and thereby advance to trial.
Since adoption of a general preference rule in 1949, several hundred thousand cases have been processed thereunder throughout the State, and hundreds of thousands have not been preferred. Nonpreferred tort calendars were maintained and called from time to time, usually once every year. Present policy in the Supreme Courts of the Ninth Judicial District is to eliminate nonpreferred tort calendars by settling or transferring said cases to more appropriate judicial forums. This has become reality in the Supreme Courts of Westchester and Putnam Counties, and it is anticipated that all nonpreferred tort cases pending in the Supreme Courts of the other counties within the district (Dutchess, Orange and Rockland) will be disposed of very shortly. It should be noted that the constitutional questions raised herein could also be directed against the special legislation applicable to Westchester County which permits transfers of tort cases from the Supreme and County Courts to local courts, and increases the monetary limits applicable to the transferee courts (UJCA, § 214). Approximately 2,500 cases have been transferred under that statute since its inception in 1970. Furthermore, directly in point — though not in issue at bar — is a rule of the Westchester County Supreme Court, adopted by the Appellate *356 Division, Second Department, on June 6, 1973, which mandates transfers of tort cases in which preferences are denied upon the expiration of 90 days (22 NYCRR 780.17). Since implementation of the cited rule in April, 1974, several hundred cases in Westchester County have been transferred thereunder.
The increase in new civil matters being filed in the Supreme Courts continues unabated. No-fault insurance has not, as yet, affected Supreme Court calendars, although the potential for mischief in increased motion work generated by the statute is beginning to emerge. One must also consider developing theories in the tort field, such as strict products liability (Victorson v Bock Laundry Mach. Co., 37 NY2d 395), and the effect of comparative negligence (L 1975, ch 69), in considering potential future impacts on the tort calendars. Similarly, judicial manpower is spread thin in our district when we realize that a Judge must pretry medical malpractice cases and participate in panel hearings (Judiciary Law, § 148-a) and must devote substantially all of his other judicial time to incompetency and conservatorship proceedings; while another Judge must ride circuit and handle only tax certiorari and condemnation proceedings. Of course, Judges must be assigned to preside over other equally important matters including contract and equity proceedings, not to mention the continued dramatic influx of matrimonial actions (see John W.S. v Jeanne F.S., 48 AD2d 30 [dual divorces]). Thus, it is apparent that the preference procedure remains an invaluable and vital tool in screening actions that may not properly belong in the Supreme Court because nonpreferred tort cases still cannot be tried without causing a substantial increase in the time it takes other matters to be reached for trial. Abolition of the preference scheme at present would wreck havoc on efficient calendar administration. That is not to say, however, that aside from the general preference scheme the courts lack imagination; present procedures that aid in the expeditious disposition of civil cases include use of the split trial (Zeisel & Callahan, "Split Trial and Time Savings”, 76 Harv L Rev 1606), bench trials whereby preferences are accorded nonjury tort cases and calendars are kept current, discovery of insurance policies (CPLR 3101, subd [f]), added by chapter 668 of the Laws of 1975, which codifies Mr. Justice McCullough’s ruling in Mosca v Pensky (73 Misc 2d 144, revd 42 AD2d 708, affd 34 NY2d 764), pretrials and compulsory arbitration (Judiciary Law, § 213, subd [8]; 22 NYCRR Part 28).
*357 THE CONSTITUTIONAL ISSUES
A. Preliminary Questions
Legitimate arguments may be asserted regarding potential constitutional issues in a scheme of calendar classification since a line of demarcation must be drawn somewhere (Note, 54 Col L Rev 110). Yet, the cases are legion in support of the view that the courts have inherent power to control their own calendars, including rule-making for preferences (Rab v Colon, 37 AD2d 813; Hart v American Airlines, 31 AD2d 896, mot for lv to app withdrawn 25 NY2d 738; Riglander v Star Co., 98 App Div 101, affd 181 NY 531; see American Life Ins. Co. v Stewart, 300 US 203; Landis v North Amer. Co., 299 US 248; Kennard v Louisiana ex rel. Morgan, 92 US 480). I have said previously in a similar context that "the Supreme Court has inherent control over calendar preference requirements, and in the absence of a statute to the contrary, may fashion a rule whereby its control is reaffirmed, not thwarted” (Chicques v Sanso, 72 Misc 2d 376, 380). Furthermore, apart from CPLR 3401, section 85 of the Judiciary Law provides in pertinent part that the Appellate Divisions are responsible for calendar administration and "may provide rules as it may deem necessary generally to promote the efficient transaction of business and the orderly administration of justice”. Needless to say, the power to control calendars is vital to the administration of the courts (Headley v Noto, 22 NY2d 1, 4). Whatever the source of the power, be it legislative or inherent, it exists.
The present rule provides in essence (22 NYCRR 674.1) that if a preference is claimed (to be construed with granted), in "an action to recover damages for personal injuries resulting in permanent or protracted disability or to recover damages for causing death”, the case may be advanced to the ready day calendar. Absent nonmonetary jurisdictional questions, the sole guideline in determining whether a case is entitled to a general preference is found in a substantial body of case law which holds that this is a matter peculiarly within the court’s discretion as to whether, disregarding the liability aspect, the claims asserted could result in a recovery in excess of a lower court’s monetary jurisdiction (Haas v Scholl, 68 Misc 2d 197; Abb NY Digest 2d, Trial, § 13). On this test, plaintiffs have failed to convince the court that they could recover in excess of $10,000 on each of the separate causes of action. No medical affidavits are offered to support the claimed injuries *358 to the infants, and the letters submitted in support of Mrs. Weber’s claims establish an insignificant injury and apparent medical recovery therefrom. The total amount of special damages ($4,263), absent a severe permanent injury (pain and suffering) indicates that these claims are well within the monetary jurisdiction of the County Court. It might be noted that had the events herein occurred after February 1, 1974, plaintiffs would not have a tort cause of action for noneconomic loss (pain and suffering) under our no-fault insurance statute (Insurance Law, art XVIII; Montgomery v Daniels, 38 NY2d 41). The fact that separate claims are set forth in the complaints for different persons does not preclude the court from exercising its discretion to deny a preference (Poturalski v Stafford, 34 Misc 2d 477).[2]
While it is the function of the courts to provide litigants with a ready forum prescribed by law to peacefully air their differences (Wolff v Laverne, Inc., 17 AD2d 213), and that all court rules remain flexible so as to efficiently dispose of cases (Matter of Association of Surrogates & Supreme Ct. Reporters v Bartlett, 49 AD2d 117), it is essential that cases in the Supreme Court be restricted to those properly belonging there, to enable meritorious claims to be heard with dispatch (Chiques v Sanso, 72 Misc 2d 376). A major aspect of the general preference syndrome is the fragmentation of this State’s judicial system. One day it is anticipated that the County and Supreme Courts will have merged into one Superior Court and, perhaps, terminate the requirement for a preference. *359 Until that time — if even then — the courts must develop programs and devices to alleviate calendar congestion, and it is hoped that the standards and goals recently announced by the Office of Court Administration will serve to achieve that desired result.
B. Due Process and Right to a Jury Trial
The subject general preference rule (22 NYCRR 674.1) is efficacious by virtue of specific statutory authority (Judiciary Law, § 85), rule-making power delegated by the Legislature (CPLR 3401; cf. Judiciary Law, § 229, subd 3; CPLR 102), and is within the inherent power of the courts. As such, the subject rule constitutes "State action” within the constitutional sense (Blye v Globe-Wernicke Realty Co., 33 NY2d 15; Matter of Figari v New York Tel. Co., 32 AD2d 434, 440), and is deemed the equivalent of a statute with a presumption of constitutionality, and the plaintiffs bear a heavy burden in establishing otherwise (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150).
Plaintiffs’ initial constitutional arguments are that the rule denies them due process (NY Const, art I, § 6) and deprives them of their right to a jury trial on damages (NY Const, art I, § 2, art VI, § 18; CPLR 4101). These contentions have been answered in the negative by the Appellate Divisions, First Department (Plachte v Bancroft, Inc., 3 AD2d 437), and Second Department (Mercurio v Kesler, 12 AD2d 959). In Plachte the Appellate Division in an opinion by (then) Justice Breitel sustained the constitutionality of former rule V of the New York County Supreme Court, and in Mercurio, the Appellate Division upheld former rule 9 of the Kings County Supreme Court. The very same contentions urged above were advanced and rejected in the cited cases. (Mercurio was a memorandum opinion which cited Plachte, but the arguments may be found in the Record on Appeal, Appellate Division, Second Department, No. 5838.) In Plachte, the court found that the adoption of the rule was rational in an attempt to alleviate court congestion, and that the predetermination of potential damages is merely a form of judicial screening which is "a risk of a judicial system, for which there is no better alternative” (3 AD2d, at p 443). It may also be observed that no "access” problem exists (cf. Matter of Smiley, 36 NY2d 433; Menin v Menin, 79 Misc 2d 285, affd 48 AD2d 904), as plaintiffs have a judicial forum readily available (the County Court) where they will receive a jury trial, and the screening technique is merely *360 a determination as a matter of law of a facet of their causes of action, a matter solely within the prerogative of the court (Note, 54 Col L Rev 110 [1954]; Siegel, Supplementary Practice Commentaries to CPLR 3403, McKinney’s Cons Laws of NY, Book 7B [in 1975/76 Supp, p 15]; cf. O’Connor v Papertsian, 309 NY 465; and cf. appellants’ arguments in Mercurio, supra, appellants’ brief, p 13). There is no taking of "property” within the meaning of the due process clause (i.e. potential maximum recovery reduced from $136,500 to $51,500) because plaintiffs never had a vested right in the inchoate prayers for relief to obtain the amount demanded (cf. Board of Regents v Roth, 408 US 564; Gleason v Gleason, 26 NY2d 28; General Obligations Law, § 13-101). In sum, there is no deprivation of due process or violation of the right to have damages assessed by a jury (Montgomery v Daniels, 38 NY2d 41).
C. Equal Protection of the Laws — Proper Forum
Plaintiffs’ equal protection argument is more troublesome as it is intertwined with the transfer provisions of the State Constitution (art VI, § 19, subd a) and the rule-making provisions of CPLR 325 (subd [d]). These questions were not raised in Plachte or Mercurio which pre-date the revision of this State’s Constitution in 1962 and the enactment of the CPLR. Plaintiffs contend that they are entitled to have their cases heard in the Supreme Court, and any transfer therefrom is unconstitutional. What plaintiffs are really urging is that they are entitled to have their cases heard in a judicial forum that can render judgment up to the amount demanded in the ad damnum clauses.
In Haas v Scholl (68 Misc 2d 197; noted in Eighteenth Annual Report of NY Judicial Conference, 1973, pp 214-215) I held that the Supreme Court has the constitutional authority to transfer a case to an inferior court without the consent of the parties, and that the recovery in the transferee court could not exceed the constitutional monetary limitation applicable. I reaffirm that ruling despite the equal protection problems alluded to there and implicitly rejected (68 Misc 2d, at p 204).
As noted in Haas (68 Misc 2d 197, 203-204, supra), article VI (§ 19, subd k) of the State Constitution authorizes the Legislature to enact laws eliminating monetary jurisdictional limitations in transfer matters (also, see, Second Annual Report of NY Judicial Conference, 1957, p 82). The Legislature has acted in two respects: it modified monetary requisites *361 concerning transfers to Town, Village and Justice Courts in Westchester County by increasing jurisdiction from $1,000 to $3,000 (UJCA, § 214); and by enactment of CPLR 325 (subd [d]) which gives the Appellate Divisions authority to vary monetary limitations on transfers on a county by county basis. When Haas was decided, only the Appellate Divisions in the Third (22 NYCRR 861.17) and Fourth Departments (22 NYCRR 1024.20) had adopted such rules. Subsequent to Haas the Appellate Division, First Department (22 NYCRR 660.21) and the Appellate Division in the Second Department for the counties of Kings (22 NYCRR 752.20), Queens (22 NYCRR 795.14) and Richmond (22 NYCRR 755.7) adopted transfer down rules pursuant to CPLR 325 (subd [d]). Similar rules have been promulgated by the Administrative Board in the area of compulsory arbitration (22 NYCRR 28.2). No such rule has been enacted for the counties in the Ninth Judicial District (or for the counties of Nassau and Suffolk) because of the congested state of the civil calendars in the lower courts. In my opinion, this reason for nonaction is reasonable and constitutes a valid basis for the monetary distinctions extant in the various counties.[3]
Where the classification has a reasonable basis, there is no denial of equal protection (McGowan v Maryland, 366 US 420; People v Ditniak, 28 NY2d 74). Here, there exists a rational basis for differentiation among litigants who choose to sue in the courts of the Ninth Judicial District without a showing of a systematic pattern of discrimination (Matter of Posner v Rockefeller, 31 AD2d 352). Classification does not offend the State or Federal Constitutions "merely because it is not made with mathematical nicety or because in practice it results in some inequality” (Lindsley v National Carbonic Gas Co., 220 US 61, 78; see Dandridge v Williams, 397 US 471, 485; Montgomery v Daniels, 38 NY2d 41). Other equal protection arguments might be advanced (McLaughlin, Supplementary Practice Commentaries to CPLR 325, McKinney’s Cons Laws of NY, Book 7B [pp 64-65 in 1975/76 Supp]), but must be rejected in view of this court’s prior ruling in Haas. Nonetheless, I adhere to the statement I made therein which continues *362 to remain singularly relevant in view of recent developments under CPLR 325 (subd [d]): "The better procedure surely is to accord uniform treatment to all litigants in this State and not unequal treatment predicated upon the mere happenstance of residency (or venue)” (68 Misc 2d, at p 205).
Plaintiffs also urge that the transfer of their consolidated action to the County Court without their consent impinges upon their right to choose the Supreme Court as their forum. It is, of course, true that the law does not distinguish between small or large claims, each litigant is entitled to have his case heard by the court (Allen v Fink, 211 App Div 411). However, the screening procedure in tort cases continues to provide the judiciary with an effective mechanism whereby the administration of the courts is made more responsive to the needs of our citizens. True, the recovery here on transfer may not exceed the inferior court’s limited monetary jurisdiction, but at least the opportunity to be heard exists. Once again, Haas is controlling precedent on this point, and unlike the situation in Alexander v Bennett (60 NY 204), the Supreme Court has not by rule (cf. People ex rel. Mayor of City of N. Y. v Nichols, 79 NY 582, 590) or decision divested itself of jurisdiction over a class of certain cases. Jurisdiction has not been renounced (Matter of Berkovitz v Arbib & Houlberg, 230 NY 261, 275); rather, the court has exercised restraint, and in its discretion, transferred the cases to a more appropriate forum (cf. 22 NYCRR 780.17 [Westchester County rule mandating transfers after 90 days]), which can even be removed back to the Supreme Court upon a proper showing (CPLR 325, subd [b]; cf. Siegel, Practice Commentaries to CPLR 3017, McKinney’s Cons Laws of NY, Book 7B, pp 118-119). Until such time as the standards and goals recently pronounced by the Office of Court Administration become reality, the only viable alternative is to afford litigants another judicial forum, even over objections, where, although delay exists, the controversy will ultimately be heard.[4]
*363 JURISDICTIONAL QUESTIONS
The County Court lacks in personam jurisdiction over nonresident individual defendants (Judiciary Law, § 190, subds 3, 5). Defendant, being a resident of Putnam County, is, therefore, not subject to the jurisdiction of the Dutchess County County Court, and plaintiffs, being residents of Dutchess County, can properly commence their actions in the Supreme Court thereof predicated upon nonmonetary jurisdictional considerations (Chiques v Sanso, 72 Misc 2d 376, 379). However, it is the policy in the Ninth Judicial District in such cases (not otherwise entitled to a general preference) to conditionally deny same provided that the defendant agrees to waive in personam jurisdictional objections upon the transfer to County Court (Haas v Scholl, supra).
CONCLUSION
Accordingly, leave to reargue is granted, and upon reargument the application for a general preference is denied provided that defendant consent to the transfer to County Court and agree not to assert in personam jurisdictional objections, by filing an affidavit to that effect with the Calendar Clerk within 30 days after the date of this decision; otherwise, the application for a general preference is granted. If defendant timely files his affidavit, the complaint on behalf of the infant Webers shall be deemed amended to separately state their individual causes of action (see n 2, supra).
Submit order on notice, which order shall provide for service of a copy thereof on the Calendar Clerk within five days after entry thereof.

. The present general preference rules in the First and Fourth Departments are located at 22 NYCRR 660.9 [c] and 22 NYCRR 1024.9, respectively. The Third Department apparently no longer requires applications for general preferences (cf. 22 NYCRR 861.21) since all cases are to be pretried (22 NYCRR 861.19) and can be transferred pursuant to CPLR 325 (subd [d]) (22 NYCRR 861.17), discussed infra (see 4 Weinstein-Korn-Miller, NY Civ Prac, par 3403.04).

. I am convinced that the fragmentation of our judicial system in the civil area, County Court vis-a-vis Supreme Court, is undesirable. Our County Court Judges frequently preside as Acting Supreme Court Justices; and as appellate orders under CPLR 325 (subd [d]) become State-wide, the monetary jurisdictional distinctions are obliterated. Here it should be noted that there are four plaintiffs, two complaints and several causes of action. Contrary to plaintiffs’ assertion that removal to County Court prohibits entry of judgment in excess of $10,000 for all plaintiffs, the rule is clear that County Court can grant judgment up to its permissible limitation on each cause of action (Baron v Bobroy, Inc., 11 AD2d 766 [construing subdivision 3 of section 67 of the former Civil Practice Act]; contra Mennella Foods Corp. v Neptune’s Nuggets, 74 Misc 2d 839; cf. Judiciary Law, § 190, subds 3, 5 referring to the "complaint” with subdivision a of section 11 of article VI of the New York Constitution referring to the "amount sought”). To hold otherwise would require plaintiffs to go through the illusion of instituting separate actions for their respective injuries, demanding damages up to the maximum amount permissible and seeking a joint trial whereby separate judgments could be rendered (Jordan v Ravitz, 20 Misc 2d 9). Thus, at bar, the County Court could award a maximum of $51,500 on the six separate claims (the complaint on behalf of the infant Webers shall be deemed amended upon transfer to separately state their individual causes of actions).

. The most recent report from the Calendar Clerk’s office for Dutchess County reveals an 8-month delay in the trial of tort jury cases in the Supreme Court, and a 26-month delay in the same category in the County Court. Nonetheless, annual intake of tort jury cases alone in the Dutchess County Supreme Court exceeds 300, which means that a nonpreferred tort case will not be tried, whereas such a case can be heard in County Court, albeit after a two-year wait.

. It is a rare case where judgment is returned in an inferior court, after transfer, beyond the monetary jurisdiction of that court. Indeed, the adoption of rules under CPLR 325 (subd [d]) assures that such an event cannot occur in those counties to which the rules are applicable. Of course, if such event transpired in the Ninth Judicial District, the County Court could sua sponte reduce the award to an amount within its jurisdiction to render (Izzi v Dolgin, 42 AD2d 966; contra, Abbey Rent A Car v Moore, 30 AD2d 952). This may be of little solace to plaintiffs’ counsel, but at least he is not faced with a mistrial were such an event to occur.