DANIEL J. CREEM et al., Respondents and Appellants, *v.*
THE FIDELITY AND CASUALTY COMPANY OF NEW YORK,
Appellant and Respondent.

#### Insurance — limitation of actions.

Upon examination of the facts, in an action brought upon a policy of liability insurance, *held*, that it was commenced within the time limited by the express provisions of the policy.

*Creem* v. *Fidelity & Casualty Co.*, 141 App. Div. 493, modified.

(Argued October 10, 1912; decided November 26, 1912.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 18, 1911, modifying and affirming as modified a judgment in favor of plaintiff entered upon a verdict directed by the court.

This action was brought on a policy of liability insurance, by which the defendant indemnified the plaintiffs in the sum of $5,000, for the term of one year commencing April 1st, 1896, against damages recovered for personal injuries sustained by their employees, or by the public generally through the negligence of their employees. The policy, among other things, provided that

"2. The assured, upon the occurrence of an accident, and also upon receiving information of a claim on account of an accident, shall give immediate notice in writing of such accident or claim with full particulars to the Company, at its office in New York City, or to the agent, if any, who has countersigned this policy.

"3. If thereafter any legal proceedings are taken against the assured to enforce a claim for damages on account of such accident, the Company will defend the same at its own cost, in the name and on behalf of the assured.

"4. The assured shall not, except at his own cost, settle any claim, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceedings without the consent of the Company previously given in writing, but he may provide such immediate surgical

relief as may be imperative. The assured shall render the Company all reasonable aid. in securing information and evidence in effecting settlements and in case the Company calls for the attendance of any employee or employees as witnesses in suits, the assured will secure his or their attendance, making no charge for his or their loss of time.

" 12. No action shall lie against the Company after the expiration of the period within which an action for damages on account of the given injuries or death might be brought by such claimant or his representatives against the assured, unless at the expiration of said period there is a suit arising out of such accident, pending against the assured, in which case an action may be brought in respect to the claim involved in such action against the Company by the assured within thirty days after final judgment is rendered in such suit, and not later.

" 13. In case of loss under this policy, the Company shall be subrogated to all claims or rights of the assured in respect to such loss against any third party or parties, and the assured shall execute any and all papers required to secure to the Company said rights."

On the 6th day of June, 1896, one Kate Johnston, while passing along a public street, sustained personal injuries, alleged to have been caused by an obstruction which was suffered to remain therein by the Phœnix Bridge Company, who were the original contractors for the building of the foundation for the pillars of an elevated railroad, but which, in fact, was the fault of the plaintiffs herein, to whom the contract had been sublet. Thereafter Mrs. Johnston and her husband each brought an action in the Supreme Court against the bridge company, she to recover damages for the injuries which she had sustained by the fall, and the husband for his loss of her services and the expenses incurred thereby. These actions finally resulted in judgments being entered against the bridge company, that of Kate Johnston for $7,887.23, January 23, 1902, and that of her husband for $4,348.40, May 10, 1902. Thereafter the judgments so recovered against

the bridge company were paid, and on the 3rd day of June, 1902, it brought two actions against the plaintiffs in this action to recover the amount of the judgments that the company had been obliged to pay. The first action, which was predicated on the Kate Johnston judgment, resulted in a verdict in favor of these plaintiffs. The other action, which was predicated upon the judgment of Bernard Johnston, the husband, resulted in a verdict directed for the bridge company, amounting then to the sum of $5,636.32. This judgment was finally affirmed in the Court of Appeals on the 25th day of June, 1906, and thereupon on the 3rd day of July thereafter this action was commenced by the plaintiffs to recover from the defendant the stipulated indemnity under its policy of insurance.

In the meantime and on the 7th day of April, 1899, actions were commenced by Kate Johnston and Bernard Johnston, her husband, against the plaintiffs in this action for the same cause of action as those which were pending against the bridge company. After, however, the judgments recovered against the bridge company were paid, and after the bridge company had brought its actions against the plaintiffs herein, the Johnston actions against the plaintiffs were discontinued, without costs, on the stipulation of Nadal, the attorney for the defendant herein, who was defending the bridge company in the actions prosecuted by the Johnstons, and who also appeared for the plaintiffs in the action brought against them by the Johnstons. The stipulation, however, was given without the knowledge or consent of these plaintiffs. It further appeared that shortly after the Johnstons had brought their actions against the bridge company, the company, who also held an insurance policy issued by the defendant, called upon the defendant to defend the actions, and that thereupon Charles C. Nadal appeared for the company and undertook the defense. Shortly thereafter he wrote the plaintiffs informing them that a suit had been brought against the bridge company to recover damages for injuries that had been received in

consequence of the default of the servants of these plaintiffs and solicited their co-operation in the preparation for trial. Thereupon Mr. Creem, one of the plaintiffs, called upon Nadal, taking his policy with him and exhibiting the same to Nadal, who then undertook to look out for their interests also in the litigation and subsequently appeared in the actions by the Johnstons against the plaintiffs. Upon the trial the court submitted to the jury but one question, as follows: " Did Charles C. Nadal in or about the month of March, 1899, have the conversation and make the promises and representations to the plaintiff as testified to by Daniel J. Creem, and, if so, did the plaintiff accept and rely upon such promises and act in accordance therewith ? You will answer either ' yes' or ' no. ' " The jury returned a verdict, answering the question in the affirmative, and thereupon the court ordered judgment for the plaintiffs.

*Henry W. Taft* and *Charles C. Nadal* for defendant, appellant and respondent.

*Herbert C. Smyth, Frederic C. Scofield* and *William W. Gooch* for plaintiffs, respondents and appellants.

HAIGHT, J. The chief question presented upon this review is as to whether the action was commenced within the time limited by the express provisions of the policy, and if not, as to whether the transaction between Nadal and Creem amounted to a waiver of the provision of the policy limiting the time within which a suit could be brought. We are unwilling to adopt a construction of this policy which would bar the action before it arose. Such could not have been the honest intent of the parties. It appearing that no action arose on behalf of the plaintiffs against the defendant until final judgment had been entered against them on the 25th day of June, 1906, and also that the plaintiffs brought this action within thirty days thereafter, they complied with the requirements of the provision of the policy, and, therefore, their action was not barred. This question has been fully discussed

in the prevailing opinion of MILLER, J., below, who, though feeling bound by the previous decision of this case in that court, expresses his personal view to this effect. In this respect we approve and adopt the same. This conclusion renders it unnecessary to consider the other questions discussed in his opinion.

As to the plaintiffs' appeal, in which the claim is made that they should be awarded judgment for the expenses incurred in defending the action of the bridge company, in which the verdict was entered in their favor, we have concluded that their claim should be allowed at the sum of $582.94.

The judgment should be modified by increasing the same in the amount of $582.94, with interest from date of judgment, and as so modified affirmed, with costs to the plaintiffs.

CULLEN, Ch. J., VANN, WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur.

Judgment accordingly.