Frank S. McCullough, J.
Defendant Herbert Pensky moves for a protective order and plaintiffs cross-move for an order *145 compelling the production of an insurance policy. The within motions raise significant issues regarding the application of our statement of readiness rule and pretrial disclosure of insurance coverage and limits. The court shall consider the issues seriatim and dispose of the matter in accordance with the following opinion.
On April 4, 1969 plaintiff Leslie Mosca was injured while crossing the Boston. Post Road in the Village of Pelham Manor when she was allegedly struck by a motor vehicle operated by defendant Denise Pensky and owned by defendant Herbert Pensky. An action for personal injuries was commenced on May 5, 1969 wherein the injured plaintiff prays for $2,500,000 as damages and her father seeks $1,000,000 on his derivative claim. Issue was joined in August, 1969 and a note of issue with statement of readiness was filed on January 13, 1970. Movant’s answer admits ownership of the motor vehicle in question. In October or November of 1971 defendant Herbert Pensky served third-party summonses and complaints upon the Village of Pelham Manor and Mains & Mains Electrical Corporation. The third-party complaints pray for indemnity in the event that the third-party plaintiff (Herbert. Pensky) is held responsible to plaintiffs. In December, 1971 the Village of Pelham Manor moved to dismiss the third-party complaint, which motion was granted and an order entered on January 22, 1972. Subsequently, Mains & Mains Electrical Corporation moved for similar relief, which motion was granted on April 4, 1972. Thereafter by decision dated July 20, 1972 the court (Trainor, J.) granted reargument, vacated the order of January 22, 1972, stayed entry of an order on the April 4, 1972 decision and reinstated the third-party complaints. An order was entered thereon on September 5, 1972 and separate notices of appeal filed by the third-party defendants on September 8, 1972 (the Village of Pelham Manor) and September 12, 1972 (Mains & Mains Electrical Corporation). The appeal by the village stayed all proceedings at the trial level (CPLR 5519, subd. [a], par. 1).
On October 10, 1972 counsel conferred with the Calendar Justice who recommended that a motion be made to sever the third-party actions so as to permit the main action to proceed to trial forthwith. Plaintiffs thereafter presented such a motion, which this court granted by decision dated October 20, 1972. Prior thereto, however, plaintiffs on October 11, 1972 served a notice for discovery and inspection, on counsel for the defendants, which calls for production of “A full and *146 complete original or true copy of the policy of automobile liability insurance covering the defendants herein and in force on April 4, 1969, including that portion of which indicates the limits of liability At the outset the parties raise procedural questions pertaining to the timeliness of plaintiffs’ notice. Movant initially urges that under the rules of the Appellate Division, Second Department, plaintiffs are barred from seeking discovery at this stage of the proceedings. Plaintiffs, in turn, urge that the appellate rules are inapplicable and, alternatively, that special circumstances exist which authorize discovery.
The appellate rule in point (22 NYCRB, 675.7) provides in pertinent part that, once an action is placed on the calendar by filing a statement of readiness and note of issue, “no prétrial examination or other preliminary proceedings may be had unless * * * unusual and unanticipated conditions subsequently develop which make it necessary that further pretrial examinations or further preliminary proceedings be had ”. The primary purpose of the aforesaid rule — commonly known as the statement of readiness rule —is to insure that only those cases which are actually ready for trial are placed on the calendar (Morrison v. Sam Snead Schools of Golf of N. Y., 13 A D 2d 986; Cerrone v. S’Doia, 11 A D 2d 350; 7 Carmody-Wait 2d, New York Practice, § 50.11). The rule is to be strictly enforced (Warren v. Vick Chem. Co., 37 A D 2d 913; Price v. Brody, 7 A D 2d 204) and, when applicable, the failure to use reasonable diligence in asserting a party’s rights operates as a forfeiture to require “ relief from the statement of readiness rule” (Mallin v. Kossin, 25 A D 2d 509; see Belski v. New York Cent. R. R., 38 A D 2d 882; Cassidy v. Kolonsky, 37 A D 2d 880; Fireproof Prods. Co. v. Trebuhs Realty Co., 30 A D 2d 521). Consequently, in the absence of special circumstances and after expiration of the time to move to vacate the statement of readiness, it has been held that the rule precludes the parties from thereafter obtaining examinations before triál (Belski v. New York Cent. R. R., supra; Warren v. Vick Chem. Co., supra; Shields v. King David Bungalow Colony, 36 A D 2d 642; Andresen v. Waller Constr. Corp., 28 A D 2d 982; Negron v. Kaufman, 26 A D 2d 548; Williams v. New York City Tr. Auth., 23 A D 2d 590), bills of particulars (Edwards Corp. v. Romas, 36 A D 2d 789) and answers to interrogatories (Rudolph v. Bowling Corp., 67 Misc 2d 463). Additionally, the rule has been held applicable on motions for discovery and inspection of designated items such as photo *147 graphs and hospital records although such disclosure would not have impeded the progression of the case along the calendar (Muller v. Lustgarten, 32 A D 2d 898; Gettemuller v. J. & M. Leasing Corp., 29 A D 2d 527; Pioneer Jewelry Corp. v. All Continent Corp., 24 A D 2d 436). At bar it is to be noted that, upon entry of the order severing the third-party actions, the matter will be ready for trial assignment.
“ However, rigid adherence to technical rules of procedure may not be permitted to interfere with the interests of' substantial justice ” (McGuire v. Pick, 8 A D 2d 800; see Blarcom v. Rogers, 11 A D 2d 678; Price v. Brody, 7 AD 2d 204, 206, supra). Under unusual circumstances disclosure may be had after the filing of a statement of readiness (Wahrhaftig v. Space Design Group, 33 A D 2d 953).
Plaintiffs contend that, if the statement of readiness rule applies, unusual conditions have developed since the filing of the certificate and that the interests of justice require disclosure. Plaintiffs assert that the unusual conditions herein are the reinstatement of the third-party actions and information received on October 10, 1972 that the prime defendants do not have sufficient coverage, whereas counsel for plaintiffs “ was led to believe from the outset that defendants had coverage far in excess of the mínimums required by law”. The court finds this argument singularly unimpressive (cf. Lachowitz v. Child’s Hosp., 32 Misc 2d 386 [where filing of statement of readiness in main action prior to joinder of third-party, action was held not a bar to discovery sought by the third-party defendant]). Indeed, were the court of the opinion that the statement of readiness rule applied to this case and in the absence of evidence that would work an estoppel upon movant herein, plaintiffs would be barred from utilizing disclosure devices, on the ground of laches (Mallin v. Kossin, 25 A D 2d 509, supra; cf. Fekeith v. New York City Tr. Auth., 65 Misc 2d 314).
Nonetheless, the court concludes that the rule does not apply where plaintiffs seek disclosure of insurance policy limits, assuming for the moment that the item is discoverable. Discovery of said item will in no way delay the trial of actions on the calendar nor be prejudicial to any party. The statement of readiness rule is not designed to thwart speedy resolution ' of matters actually ready for trial. Indeed, our local court rules are in the process of revision and it has been proposed that pretrial disclosure of insurance policy limits be required in all personal injury and wrongful death cases ‘ ‘ in *148 which a statement of readiness has been filed ” (Buies of Westchester County, Supreme Court, proposed rule 780.23, subd. [a]). Furthermore, it has been recognized that disclosure of policy limits may be most profitably exploited at a pretrial conference (Bosenberg, The Pretrial Conference and Effective Justice [Col. Univ. Press, 1964], passim) and tort matters are not usually pretried in this Department until after the statement of readiness -has been filed (22 NYCBB 675.10). Consequently, it is implicit that the appellate regulations in point may not be read to preclude discovery of insurance policy limits.
The question next arises as to whether an insurance policy or the monetary limits specified therein constitute discoverable items. Prior to reaching those questions it is necessary to briefly discuss the procedural framework whereby discovery is obtained and the particular method used herein. While disclosure in civil cases may be available at any time (Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400, 409-410), discovery is governed by CPLB article 31. Plaintiffs served their notice of discovery and inspection pursuant. to CPLB 3120, calling for the production of the insurance policy as an item to be inspected without the necessity of an examination before trial (cf. CPLB 3111)i Defendant Herbert Pensky has timely moved for a protective order (CPLB 3122)[1] which, assuming that the item is discoverable, requires that he establish a ground under CPLB 3103 to prevent disclosure. The cited provision provides in essence that the. court may regulate disclosure to prevent abuse (CPLB 3103, subd. [a]). The only argument that movant inferentially makes in point is that disclosure upon the eve of trial is abusive. Significantly, CPLB 3120 permits the notice for discovery and inspection to be served at any time ‘ ‘ after commencement of an action ’ ’. Accordingly the court concludes that, upon the present posture of the case, the temporal sequence *149 herein does not require that a protective order issue (cf. Siegel, Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3120, p. 518). The statement of readiness rule aside, the court perceives no abuse in the use of disclosure devices at this stage of the proceedings for the sole purpose of ascertaining insurance limits. Preferable procedure dictates that such discovery occur long in advance of trial[2], but, in the absence of any claim of prejudice plaintiffs are not barred from seeking policy limits at this time.
The court shall now address itself to the crux of the within controversy, to wit: whether an insurance policy constitutes a discoverable item. CPLR 3120 is merely a device to obtain production of an item, but whether the item is subject to disclosure must be determined by reference to CPLR 3101 (Siegel, Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3120, pp. 516-518). Subdivision (a) of CPLR 3101 is the heart of the discovery provisions and provides: “(a) Generally. There' shall be full disclosure of all evidence material and necessary in the prosecution or defense of-an action”. The cited provision is to be contrasted with former section 288 of the Civil Practice Act which authorized discovery of testimony material and necessary to the litigation. Accordingly, it is clear that the scope of disclosure under the CPLR is to *150 be broadly construed (Eleventh Annual Report of N. Y. Judicial Conference, pp. 148, 185 [1966]). “The purpose of disclosure procedures is to advance the function of a trial to ascertain truth and to accelerate the disposition of suits ” (Rios v. Donovan, 21 A D 2d 409, 411). Furthermore, the efficient administration of the congested tort calendar mandates liberal disclosure to achieve ‘ ‘ fair and speedy disposition, either by way of trial or settlement” (Wilhelm v. Abel, 1 A D 2d 55, 56).
The discovery provisions of CPLR article 31 are not to be read in a vacuum but must be construed in tandem with other pertinent regulations so as to move cases that have been on the calendar for a long period of time, especially where of dubious merit (Sortino v. Fisher, 20 A D 2d 25). Accordingly, the word “evidence” as used in subdivision (a) of CPLR 3101 has not been strictly construed and is broad enough to encompass any relevant information (West v. Aetna Cas. & Sur. Co., 49 Misc 2d 28, mod. 28 A D 2d 745), including information that might not be admissible at trial (Avila Fabrics v. 152 West 36th St. Corp., 22 A D 2d 238; Turner v. Town of Amherst, 62 Misc 2d 257). Indeed, the statutory phrase “material and necessary”, has been expanded by the Court of Appeals in a landmark decision to include discovery of any relevant information that serves to reduce “ delay and prolixity” (Allen v. Crowell-Collier Pub. Co., 21 N Y 2d 403, 406). “ The test is one of usefulness and reason ” (ibid.).
The propriety of disclosing insurance policy limits has been litigated in several cases at nisi prius with divergent results, and has beén passed upon by the Appellate Division, Second Department, in two recent cases which shed some light on the problem. Other than the argument regarding the statement of readiness rule, defense counsel herein does not give the issue extended treatment. No factual allegations of prejudice are presented; rather counsel relies upon one case (Gold v. Jacobi, 52 Misc 2d 491) and cryptically asserts that “ an insurance policy and the limits thereof are not subject to discovery”. Nevertheless, the substantive issue raised herein is very important, as it tends to affect litigants in virtually every tort matter filed in the courts of this State; It is therefore necessary to review the rules of liability insurance in an evidentiary context and examine the arguments pro' and con pertaining to pretrial disclosure of insurance policies. Evaluation of these principles and arguments requires discussion of *151 cases in point that have been decided in this State and other jurisdictions.
No less an authority than Dean Wigmore has said that in this modern era of compulsory automobile liability insurance (see Vehicle and Traffic Law, § 312) the rule against nondisclosure of the fact of insurance coverage at trial is “a piece of hypocritical futility” (2 Wigmore, Evidence [3d ed.], § 282a, p. 146). Nonetheless, the general rule in this State as in a majority of jurisdictions is that in a negligence action the injection of insurance in the case at trial constitutes reversible error (Simpson v. Foundation Co., 201 N. Y. 479; proposed rules of Evidence [Federal], rule 4-11 [as approved by the United States Supreme Court to be effective July 1, 1973 upon Congressional approval], 46 F. R. D. 242, 56 F. R D. 230; ann. 4 ALR 2d 761 “ Showing as to Liability Insurance”; note, 26 Cornell L. Q. 137 [1940]). Similarly, it is reversible error to inform the jury that a party is not wealthy and is uninsured (Rendo v. Schermerhorn, 24 A D 2d 773). Recent decisions, however, tend to disregard jury knowledge of the presence of insurance in automobile cases on the grounds that “ in present times when jurors know that liability insurance is almost universal, the [mention of insurance at trial is] not sufficiently prejudicial to warrant setting the verdict aside ” (Rowlands v. Parks, 1 A D 2d 925, 926, revd. other grounds 2 N Y 2d 64; Hager v. Bushman, 255 App. Div. 934; Halstead v. Sanky, 48 Misc 2d 586; Senecal v. Hovey, 44 Misc 2d 409; note, 31 Brooklyn L. Rev. 382 [1965]). Nonetheless, the general rule obtains in nonautomotive matters (Lee v. Mount Ivy Ind. Developers, 31 A D 2d 958; Uy v. Shapmor, Inc., 45 Misc 2d 543 [App. Term, 1st Dept.]), in close cases (Depelteau v. Ford Motor Co., 28 A D 2d 1178), and in any case where a specific insurance carrier is mentioned (O’Connell v. Consolo, 32 A D 2d 820; contra, Carozza v. United Hoisting Co., N. Y. L. J., April 9, 1970, p. 19, col. 2).
Consequently, it is fair to state that our courts have been zealous in keeping the jury in the dahk about liability insurance (Kelly v. Yannotti, 4 N Y 2d 603; Gebo v. Findlay, 257 App. Div. 66). However, the fact of insurance may be divulged at trial where relevant to some material issue directly raised by the pleadings, such as ownership or control of the instrumentality which caused the accident (Leotta v. Plessinger, 8 N Y 2d 449; see Bridger v. Donaldson, 29 N Y 2d 769). Thus, it may be broadly stated that, unless relevant to an issue in the case, the *152 fact of insurance coverage is not a proper subject of inquiry at trial.
However, decisions supporting the above statement are not decisive on the issue presented here pertaining to pretrial discovery. Discovery of insurance policies has been authorized in this State where the policies were relevant to some facet of the litigation (see, e.g., Merchants Ind. Corp. of N. Y. v. Wallack, 14 A D 2d 777; Guilianelle v. Brownell, 7 A D 2d 691; Tickel v. Oddo, 66 Misc 2d 386; Matter of Day v. State Farm Mut. Ins. Cos., 63 Misc 2d 497; Collins v. Jamestown Mut. Ins. Co., 56 Misc 2d 964; note, 36 Brooklyn L. Rev. 464, 475-478 [1970]).[3] However, the reported cases which have considered the question at bar are closely divided and appellate pronouncements in point have not settled the issue (Fierman v. Cirillo, 40 A D 2d 976, mot. for lv. to app. den. N. Y. L. J., Jan. 10, 1973, p. 21, col. 2; Cummings v. Dominici, 40 A D 2d 765, mot. for lv. to app. den. N. Y. L. J., Dec. 1, 1972, p. 18, col. 4; Wade v. Catalano, 32 A D 2d 845; Kevelson v. Maxwell, 71 Misc 2d 498; Sashin v. Santelli Constr. Co., 69 Misc 2d 695; State of New York Nat. Bank v. Gregorio, 68 Misc 2d 926; Gold v. Jacobi, 52 Misc 2d 491, supra; Nolan v. Webber, N. Y. L. J., June 14, 1972, p. 21, col. 2 [Sup. Ct., Westchester County]; see Milk Tank Serv. v. Wood, 200 Misc. 333). Gold v. Jacobi (supra) is the leading case in this State for the proposition that insurance policy limits are not discoverable. The court in Gold (supra) expressed .the view that discovery of insurance policies was peculiarly a matter within the province of the Legislature and to hold that disclosure lies would convert pretrial matters into post-judgment proceedings. Thereafter, the court in Gregorio (supra) reached a contrary conclusion and it represents the first reported case in this State to permit discovery of insurance policy limits as a matter of course in an ordinary negligence action. Mr. Justice Conway there held that Gold v. Jacobi (supra, p. 928) “ is no longer the approach to use as it is not in line with the liberal trend in the field of disclosure adopted by Allen v. Crowell-Collier Pub. Co.”. Gregorio was followed by Mr. Justice Dillon in the Nolan (supra) ease. In the interim Sashin (supra) was decided and followed the negative.pronouncement in Gold without citing, or discussing Gregorio.
*153 The court in Sashin {supra) held that CPLR*3101 does not apply to permit discovery of nonevidentiary matter that is not material and necessary within the,framework of the pleadings and characterized insurance policy limits as falling outside the ambit of the statute. The court further noted that any change in the rule as set forth in Gold {supra) should be left to the Legislature and this view was subsequently adopted in Kevelson v. Maxwell (71 Misc 2d 498, supra). It is therefore clear that at nisi prius there does not exist- any fixed rule pertaining to discoverability of insurance policy limits in ordinary negligence actions. Significantly, none of the above decisions mention or discuss the stage of the proceedings at which discovery was sought.
Subsequent to the determinations discussed above the Appellate Division, Second Department, passed upon a facet of the discoverability problem in Fierman v. Cirillo (40 A D 2d 976, supra). There the appellate court reversed an order which had denied defendant’s motion for a protective order upon plaintiff’s notice for discovery and inspection of defendant’s insurance policy. The court held (p. 976) that “In our opinion, it was an improvident exercise of discretion to grant the discovery and inspection of the insurance policy” (citing Gold [supra] and Sashin [supra]). The court further stated that in Cummings v. Dominici (40 A D 2d 765, supra), it affirmed without opinion an, order which denied disclosure. Since it appears that disclosure is a matter addressed to the discretion of the Trial or Special Term Justice, I have examined the records on appeal in the two recent appellate decisions.
In Fierman (40 A D 2d 976, supra) the record on appeal indicates that the action was one for personal injuries in negligence and the notice for discovery and inspection was served before all pretrial proceedings had been completed. The record further reveals that defendant’s counsel argued that disclosure at this time was inappropriate and might be more readily deferred until a pretrial conference. The record in Cummings (40 A D 2d 765, supra) indicates that that case is far removed from situations such as at har. There plaintiff in a negligence action sued for personal injuries and defense counsel revealed the limits of a restricted-policy. Prior to the commencement of any pretrial proceedings, plaintiff moved to join an insurance company as a party defendant and attempted to ascertain whether defendant had additional coverage (cf. Felton, “ Insuring Against the Possibility of an Excess Verdict Resulting From Automobile Liability Claims ”, 35 Ins. Counsel J. 272, 278-279 [1968]).
*154 After examination of the aforesaid records on appeal, I have concluded that the affirmance without opinion in Cummings (40 A D 2d 765, supra) and the pronouncement in Fierman (40 A D 2d 976, supra) apparently establish an appellate policy in this Judicial Department that insurance policy limits ordinarily are not discoverable prior to completion of all pretrial matters. Implicit in the Fierman (supra) memorandum is that discovery shall not be denied as a matter of law. Additionally, it must be noted that in Wade v. Catalano (32 A D 2d 845, supra) the Appellate Division, Second Department, held that it was error to grant a trial preference on the ground that the defendants failed to co-operate with the court, where defense counsel at a pretrial conference advised the court that plaintiff’s demand was within policy limits but refused to settle. The Appellate Division did not discuss the question of disclosure and the point was not raised on appeal. Consequently, in light of Fierman (supra), it might constitute a provident exercise of discretion to permit disclosure of insurance policy limits to counsel at pretrial conferences, and the revised rules for Westchester County so provide (proposed rules 780.23, subd., [e], par. [6], n. 2). At bar, of course, we are well beyond the pretrial conference stage and the question of discoverability under the facts herein remains viable.
At this point it would be useful to discuss decisions- of other jurisdictions but the court does not believe that it would be particularly enlightening to analyze those determinations which deny discovery, since the Gold (52 Misc 2d 491, supra) and Sashin (69 Misc 2d 695, supra) opinions adequately cover analogous judicial expressions of opinion pertaining thereto (see, also, Stopher, “ Should a Change Be Made in Discovery Rules to Permit Inquiry as to Limits of Liability Insurance ”, 35 Ins. Counsel J. 53 [1968]; Hand, “ Pre-Trial Discovery of Insurance ”, 3 The Forum 310 [1968]; Fournier, “ Pre-Trial Discovery of Insurance Coverage and Limits ”, 27 Ins. Counsel J. 122 [I960]).
In the courts of sister State jurisdictions, there exists a split of authority concerning pretrial discovery of insurance policy limits but the trend of decisions favors disclosure (Szarmack v. Welch, 220 Pa. Super. Ct. 407; Ann. 13 ALR 3d 822 “ Discovery-Policy Limits ”; Ann. 41 ALR 2d 968 “ Pretrial Discovery-Insurance ”; 1969/1970 Annual Survey of American Law 510-512 [N. Y. U.] ; 32 Amer. Trial Lawyers J. 359-368 [1968]). Of course, pretrial disclosure proceedings have ultimate and necessary boundaries (Hickman v. Taylor, 329 U. S. 495, 507) *155 and it has been held that these boundaries are “ certainly broader ” than at trial and encompass discoverability of insurance policy limits (Szarmack v. Welch, supra). In short, relevancy is more loosely construed at preliminary Stages than at trial (Maddox v. Grauman, 265 S. W. 2d 939 [Ky.]). Some . courts favor disclosure on the ground that plaintiff may learn something that would aid him in the prosecution of the action (Brackett v. Woodhall Food Prods., 12 F. R. D. 4 [E. D. Tenn.]). Other jurisdictions have taken the novel approach that plaintiff is a third-party beneficiary of the insurance contract and therefore has a discoverable interest (Laddon v. Superior Ct. of City & County of San Francisco, 167 Cal. App. 2d 391; Slomberg v. Pennabaker, 42 F. R. D. 8, 12 [M. D. Pa.]).[4]
The primary rationale in support of discovery is that both counsel and the parties will realistically negotiate their claims, thereby maximizing efforts at settlement (Davis, “ Pretrial Discovery of Insurance Coverage ”, 16 Wayne L. Rev. 1047 [1970]). The American Bar Association favors pretrial discovery of *156 insurance limits (Report of the A. B. A. Special Committee on Automobile Accident Reparations 51 [1971]). Indeed, experienced, trial counsel for plaintiffs and insurers have recognized the value of pretrial discovery to stimulate settlements (Werchick, Settling the Case — Plaintiff 4 AM. Jur., Trials 289, 353; Knepper, Settling the Case — Defendant 4 AM. Jur., Trials 379, 402). Many carriers reveal policy limits to the Trial Judge at pretrial conferences (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par 3101.06). Certain jurisdictions by statute or court rule mandate such disclosure at pretrial conferences (Kansas Stat. Ann., § 600-216; Myers v. St. Francis Hosp. 91 N. J., Super. 377). Rule 26 (subd. [b], par. [2]) of the Federal Rules of Civil Procedure (U. S. Code, tit. 28, Appendix), as amended in July 1970, authorizes such discovery in the Federal courts. Furthermore, the rule against pretrial disclosure is self-defeating where the failure to disclose policy limits leads to subsequent lawsuits predicated upon the insurer’s bad faith refusal to settle (Szarmack v. Welch, 220 Pa. Super. Ct. 407; 19 Def. L. J. 173, 184-185 [1970]; 18 Def. L. J. 374-375 [1969]), wherein pretrial disclosure is permitted (Groben v. Travelers Ind. Co., 49 Misc 2d 14, affd. 28 A D 2d 650).
The only nonlegal argument against pretrial disclosure which has gained some support is that counsel, armed with the knowledge and extent of coverage, will arbitrarily demand high figures for settlement (note 74 Harv. L. Rev. 940, 1018-1020 [1961]). This contention tends to fall upon deaf ears when one considers that most attorneys without the requisite knowledge presume, as here, that large coverage exists and act accordingly (Werchiek, Settling the Case — Plaintiff 4 AM. Jur., Trials 289, passim). The court will not ascribe to counsel for either plaintiffs or defendants actions inimicable to their clients or violations of the Canons of Professional Ethics (cf. State of New York Nat. Bank v. Gregorio, 68 Misc 2d 926, 927-928, supra). In this regard it is interesting that one study of personal injury litigation found that the insurance adjuster’s average median reserve value closely approximates the actual worth of the case in settlement or verdict (Rosenberg & Sovern, " Delay and the Dynamics of Personal Injury Litigation ’ ’, 59 Col. L. Rev. 1115, 1170 [1959]; cf. Kelner, “ Personal Injury Trial Practice ”, N. Y. L. J. Nov. 8, 1972, p. 1, col. 1).
Other arguments that have been raised against disclosure (see 4 Moore’s Federal Practice, par. 26.62 [1], pp. 26-337, 26-338; Fournier, “ Pre-trial Discovery of Insurance Coverage and Limits ”, 28 Fordham L. Rev. 215, 228-229 [1959]) have been *157 adequately answered by those decisions in sister States which permit discovery. Thus, it was held under the less liberal disclosure provision of subdivision (a) of rule 26 of the Federal Rules of Civil Procedure (U. S. Code, tit. 28, Appendix): “ That the disclosure of insurance coverage and the extent thereof is more conducive to the just, speedy and inexpensive determination of litigation than the withholding of such information, and although the information may not be relevant to the issue of negligence and damages, it is not only of great interest and concern to the plaintiffs in most actions, but is relevant to the ‘ subject matter involved in such actions ’ ” (Tighe v. Shandel, 46 F. R. D. 622, 624 [W. D. Pa.]). Put another way and addressing itself specifically to the question of materiality, the Illinois court in People ex rel. Terry v. Fisher (12 Ill. 2d 231, 238) stated: “ The presence or absence of liability insurance is frequently the controlling factor in determining the manner in which a case is prepared for trial. That there will' be actual rather than nominal recovery conditions every aspect of preparation for trial of these cases, — investigators, doctors, photographers and even the taking of depositions.”’ More to the point, the court went on to observe (p. 239) that inasmuch as the insurer was the real party in interest “ it would seem to be relevant, if not indispensable, that plaintiff’s attorney have knowledge of the existence of insurance in order to prepare for the. case he has to meet and be apprised of his real adversary”. Stated differently, one court noted that the defendant himself surely would not object to disclosure and would endeavor to settle within policy limits to avoid personal exposure (Slomberg v. Pennabaker, 42 F. R. D. 8, 11, supra).
Two arguments often presented by opponents against disclosure have been answered by the Pennsylvania and Kansas courts. To the proposition that disclosure will lead to discovery of the net worth of defendants (Gold v. Jacobi, 52 Misc 2d 491, supra) the Pennsylvania court noted that “ the concern for the privacy of the individual would prevent us from opening a defendant’s financial affairs to the public [but] would not prevent us from allowing disclosure of liability insurance contracts ” (Szarmack v. Welch, 220 Pa. Super. Ct. 407, supra).[5] *158 Similarly, in response to the contention that discovery will lead to inflated prayers for damages the Kansas court held: ‘ ‘ The court is in control of the situation. The possibility of exaggerated or padded claims, stemming from disclosure * * * may be forestalled by the discretionary denial of amendments to pleadings ” (Cropp v. Woleslagel, 207 Kan. 627, 633). Admit *159 .tedly, the last observation is less than satisfactory if discovery is authorized prior to the institution of an action but even then a court order is required for disclosure (CPLB 3102, subd. [c]). Furthermore, Fierman v. Cirillo (40 A D 2d 976, supra) may be read as precluding discovery even where actions have been instituted in which pretrial proceedings have not been completed (ef. n. 2). On the other hand it may be noted that this State apparently does not yet permit indefinite prayers for damages (Swiss Credit Bank v. International Bank, 23 Misc 2d 572; Geisler v. Rutkowski, 177 Misc. 284; cf. Gumb v. Twenty-Third St. Ry. Co., 114 N. Y. 411, 414; Matter of Silverstris v. Silverstris, 24 A D 2d 247; Douglas v. Latona, 61 Misc 2d 859; 3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3017.01; 13 N. Y. Jur., Damages, § 65); and since verdicts may not exceed the amount specified in the ad damnum clause (Naujokas v. H. Frank Carey High School, 33 A D 2d 703) counsel invariably will select a high dollar number as his prayer for monetary relief. Consequently, discovery in advance of suit might tend to facilitate proper estimation of the value to be chosen and thereby reduce the number of subsequent motions to amend pleadings. Nonetheless, as noted earlier, the timeliness of such discovery motions must be decided in light of the Fierman (supra) case and the court expresses no views on the propriety of obtaining disclosure prior to suit (cf. n. 2).
In reality this case does not rise to the level of a Hobson’s choice. The three key words to disclosure in this State are that the item sought must be ‘ ‘ evidence material and necessary ’ ’ (CPLB 3101, subd. [a]), which has been interpreted to mean any relevant information whether or not within the pleadings. Discovery of insurance coverage could not be had under former practice statutes, because that which was disclosed had to be the equivalent of testimony. Under the CPLB the answer seems quite clear that disclosure is mandatory.
Yet, the court has treated the issue at length primarily because of the conflicting interpretations rendered by other jurists in this State and the potential conflict that may exist between our revised court rules vis-a-vis recent appellate pronouncements.
This court is of the opinion that the rationale of the Court of Appeals in Allen v. Crowell-Collier Pub. Co. (21 N Y 2d 403, supra), mandating discovery under the test of usefulness and reason, and the well-reasoned decisions of other jurisdictions, require that pretrial discovery of insurance policy limits be available to litigants of this State. This view is re-enforced through my understanding of the Fierman (40 A D 2d 976, *160 supra) case which instructs us that such motions are addressed to the sound discretion of the court and merely present timing problems. Otherwise, I am in accord with Mr. Justice Conway’s resolution of the question as stated in Gregorio (68 Misc 2d 926, supra). Commentators who have reviewed the conflicting New York opinions at nisi prius agree that discovery is consistent with the Court of Appeals decision in Allen (supra); (see, note, 47 St. John’s L. Rev., pp. 169-171 [1972]; Siegel, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3101, p. 7 [in 1972/73 Supp.]). One noted authority concludes that discovery is required on the ground that “ if plaintiff’s gaining knowledge of the defendant’s policy can influence settlement talks, the policy is material and necessary indeed ” (Siegel, op. cit.). This is precisely what was held in Terry v. Fisher (12 Ill. 2d 231, supra). Furthermore, we have previously ascertained that disposition of cases by way of settlement is an important factor in the utilization of judicial discretion regarding disclosure devices. Discovery of insurance policy limits can only lead to an increase in the settlement ratio and in no way prejudice defendants, since what is disclosed is not admissible at trial. Furthermore, in view of the new- rules regarding apportionment among tort-feasors on a comparative negligence basis (Kelly v. Long Is. Light. Co., 31 N Y 2d 25; Dole v. Dow Chem. Co., 30 N Y 2d 143), insurers might be well advised to re-examine their blanket injunction against pretrial disclosure to parties since the carriers for codefendants and third parties are now really adversaries in the truest sense of the word (Moreno v. Galdorisi, 39 A D 2d 450; Grynbal v. Grynbal, 32 A D 2d 427; Liebman v. County of Westchester, 71 Misc 2d 997). Such disclosure among tort-feasors seemingly would tend to facilitate partial if not total settlements of actions, tend to avoid potential bad faith questions (Gavin, “ The Insurance Carrier’s Obligations to Defend When Claims Against the Insured Exceed The Policy Limits ”. 35 Ins. Counsel J. 92 [1968]), certainly would aid carriers in determining their method of defense as well as selection of outside counsel (cf. Sixteenth Annual Report of N. Y. Judicial Conference, p. 186 [1971]; Siegel, Supplementary Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3017, pp. 182-185 [in 1972-73 Supp.]) and should be a fact upon which a cotortfeasor can prudently decide whether to hire personal counsel to prosecute individual claims in the original action (cf. Schwarts v. Public Administrator of County of Bronx, 24 N Y *161 2d 65).[6] Additionally, the fact that the insurer is the real party in interest is not to be ignored on motions of this nature (Gelbman v. Gelbman, 23 N Y 2d 434). “ The strongest argument against discovery is more one of tactics than of actual prejudice. This is unimpressive ” (Slomberg v. Pennabaker, 42 F. R. D. 8, 12, supra). Insurance is a contingent asset (Szarmack v. Welch, 220 Pa. Super. Ct. 407, supra; Slomberg v. Pennabaker, supra,p. 11) and disclosure herein will not open a Pandora’s box in the field of discovery (see Mitten Ind. v. American Mut. Liab. Ins. Co., 37 A D 2d 817).
It cannot be gainsaid that ‘ ‘ the presence of insurance has been and is working an erosion of much of what was considered settled tort law ” (Miller, “ Unusual Developments in the Field of Tort Law”, 42 N. Y. St. Bar. J. 133, 140 [1970]; Prosser, Torts [4th ed.], ch. 14). Nor may it be seriously disputed that discovery rules are designed to afford litigants possible avenues of inquiry prior to trial to achieve substantial justice. While some commentators have recommended legislative relief to spe *162 cifically mandate discovery of insurance policies or make such policies a matter of public record (Fournier, “ Pre-Trial Discovery of Insurance Coverage and Limits ”, 28 Fordham L. Rev. 215 [1959]) this decision does not encroach upon legislative prerogatives. Legislative inaction does not work an estoppel upon the judiciary (Flanagan v. Mount Eden Gen. Hosp., 24 N Y 2d 427). No violence is rendered upon subdivision (a) of CPLR 3101 and this case narrows down to one of statutory construction which is peculiarly a function of the judicial process (Matter of Marino v. Town of Ramapo, 68 Misc 2d 44, 56). Words in statutes have literal and hidden meanings (Williams v. Williams, 23 N Y 2d 592) but the cardinal rule of statutory interpretation is the general spirit and purposb underlying the statute’s enactment “ and that construction is to be preferred which furthers the object, spirit, and purpose of the statute ” (McKinney’s Cons. Laws of N. Y., Statutes, § 96). In this regard we are cognizant of the legislative declaration of policy that the provisions of the CPLR “ shall be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding ” (CPLR 104). Significantly, similar declarations are contained in the practice statutes of other jurisdictions that have ruled in favor of disclosure and have been found decisive on the point in issue (see, e.g., Slomberg v. Pennabaker, 42 F. R. D. 8, 12, supra). Consequently, this court is doing nothing more than engaging in the time-honored tradition of reviewing unsatisfactory court-made rules (in the Gold, 52 Misc 2d 491, supra, and Sashin, 69 Misc 2d 695,. supra, sense) and, not being bound by stare decisis (cf. Montrose v. Baggot, 161 App. Div. 494, 501-502, app. dsmd. 220 N. Y. 686), is free to choose the path it deems legally correct.
To recapitulate, the court is holding that discovery of insurance policy limits may be had after the filing of the statement of readiness, and is within the intendment of subdivision (a) of CPLR 3101. Accordingly, plaintiffs have established their right to examine the document sought (Lovasz v. Fowler, 209. App. Div. 169) and the cross motion is granted to the extent that defendant Herbert Pensky through his attorney must comply with the notice for discovery within three days after the date of this decision or prior to trial, whichever is earlier.
Parenthetically, it must be emphasized that defense counsel has objected to such discovery in general on a per se basis. Consequently, this case is not the proper vehicle for fixing, a mechanism in the method of disclosure nor does the court decide whether in future cases more than the policy limits ought to be *163 revealed (cf. Myers v. St. Francis Hosp., 91 N. J. Super. 377, supra; Slomberg v. Pennabaker, 42 F. R. D. 8, supra; Brackett v. Woodall Food Prods., 12 F. R. D. 4, supra). These problems, if any exist here, have not been presented for resolution and the law in regard thereto must await further developments. The motion for a protective order is denied as academic.

. The fact is not without significance. Movant wisely refrained from relying solely upon the statement of readiness rule (cf. Farone v. Korey Motors, 44 Misc 2d 565; Siegel, Practice Commentaries, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3122, pp. 597-598) because if, as I have found, the rule is inapplicable the five-day time limit embodied in CPLR 3122 must be complied with or the item is discoverable unless privileged (Matter of Handel v. Handel, 26 N Y 2d 853; Zeif v. Zeif, 31 A D 2d 625; Coffey v. Orbachs, Inc., 22 A D 2d 317; Salmonsen v. Brown, 62 Misc 2d 623; Weisgold v. Kiamesha Concord, 51 Misc 2d 456). No questions of privilege have been raised herein and an assertion that policy limits are legally privileged is without merit (cf. Fierman v. Cirillo, 40 A D 2d 976).

. The better rule would seem to be that discovery occur at a pretrial conference. Usually when such a conference is scheduled all discovery proceedings have been completed and demands and offers stated (see Cropp v. Woleslagel, 207 Kan. 627). As indicated earlier, our local court rules are undergoing revisions and it has been recommended that Westchester County adopt a mandatory pretrial rule in tort cases in which a statement of readiness has been filed (proposed rule 780.23, subd. [a]). Subdivision (e) of the cited rule requires that the justice presiding at the pretrial consider: “ (6) Such other matters as may aid in the disposition of the action including, but not limited to, the discovery of the existence and coverage afforded by any insurance agreement the proceeds of which will be used in whole or in part to satisfy any judgment obtained in the action.” Furthermore, our present statement of readiness rule requires that counsel certify that settlement has or has not been discussed (22 NYCRR 675.2 [b]). Therefore, it may be argued that disclosure of policy limits occurs prior to the filing of a statement of readiness. The court expresses no view on the timing of such discovery and the opinion herein should not be read as limiting the stage at which discovery may be sought. Indeed, it is éommon practice for the Trial Justice to confer with counsel about settlement during jury trials and not unusual for insurers to reveal coverage at that time. Moreover, it has been suggested that in certain cases disclosure must be had after verdict (Siegel, Supplementary Practice Commentary, MgKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3017, pp. 182-185 [in 1972-73 Supp.]); and a persuasive argument may be made in favor of disclosure after a determination on liability at a split trial (cf. Di Biase v. Rederi A/B Walship, 32 F. R. D. 41 [E. D. N. Y.]).

. It has recently been proposed that New York enact a direct action statute authorizing suits against insurers in jurisdictional situations and that discovery of policies be permitted as of right (Sixteenth Annual Report of N. Y. Judicial Conference, p. 264 [1971]).

. The argument is appealing but somewhat tenuous. Laddon (supra) specifically referred to provisions of the California Insurance Law which gave a plaintiff the right to sue the carrier where a judgment against the insured remains unsatisfied. New York, as virtually every other State, has similar statutory provisions (Insurance Law, § 167, subd. 7) but it seems premature to apply the third-party beneficiary doctrine in a case where the plaintiff has not achieved the status of a judgment creditor (cf. Jackson v. Citizens Cas. Co. of N. Y., 277 N. Y. 385 [decided under the predecessor of Insurance Law, § 167]). As originally conceived the purpose of liability insurance was to indemnify the insured against loss (Creem v. Fidelity & Cas. Co. of N. Y., 141 App. Div. 493, mod. 206 N. Y. 733; Langmaid, “ Subrogation in Suretyship and Insurance ”, 47 Harv. L. Rev. 976, 1002 [1934]) but today the design is such that the insurance constitutes the asset that will be used in the first instance to satisfy a claim or judgment. An insured is thus considered a prudent person for having obtained insurance and there are expressions in the eases that at least to the extent of medical payment coverage the injured person is a third-party beneficiary of the insurance contract (Silinsky v. State-Wide Ins. Co., 30 A D 2d 1; Moore v. Leggette, 24 A D 2d 891, affd. 18 N Y 2d 864). Nonetheless, even these limited statements regarding third-party beneficiary status have been questioned (Grynbal v. Grynbal, 32 A D 2d 427). Furthermore, it has been held that, except as section 167 of the Insurance Law provides, a noninsured person “is not a third-party beneficiary of the contract of insurance obtained by the insured ” (Browdy v. State-Wide Ins. Co., 56 Misc 2d 610, 617 [Shapiro, J.]; cf. Gordon v. Nationwide Mut. Ins. Co., 30 N Y 2d 427; Pipoli v. United States Fid. & Guar. Co., 38 A D 2d 249, affd. 31 N Y 2d 679; Matter of Kreloff, 65 Misc 2d 692; Comment, 46 St. John’s L. Rev. 172 [1971]); note, 36 Brooklyn L. Rev. 464, 482-484 [1970]). Consequently, it is unlikely that in the usual negligence action the third-party beneficiary doctrine will be deemed applicable so as to confer upon an injured person the absolute right to pretrial discovery of insurance coverage. Upon the facts at bar, this court holds that the aforesaid doctrine is not applicable for discovery purposes.

. On the question of disclosure of net worth some comments appear in order. Assuming for the moment that plaintiffs’ prayer for damages includes a claim for punitive damages (Knibbs v. Wagner, 14 A D 2d 987; Gill v. Montgomery Ward & Co., 284 App. Div. 36; Browdy v. State-Wide Ins. Co., 56 Misc 2d 610) the question of pretrial discovery becomes directly relevant within the pleadings first on the question of coverage and secondly on the issue of defendants’ wealth." The majority rule recognized in New York is that an ordinary “ accident ” policy *158 does not afford coverage for punitive damages (Teska v. Atlantia Nat. Ins. Co., 59 Misc 2d 615; Ann. 20 ALR 3d 320 “ Liability Insurance — Coverage ”; Ann. 20 ALR 3d 343 “ Liability Insurance — Punitive Damages ”; Prosser, Torts, 12-13 [4th ed.]). It has been suggested that these rulings are predicated upon a public policy rationale which disappears in vicarious liability matters (Logan, “Liability Insurance Coverage” DRI 23, 25-26 [1969]; Brin, “Punitive Damages & Liability Insurance” 31 Ins. Counsel J. 265 [1964]). Nonetheless, the weight of authority is that public policy prohibits indemnification to tort-feasors called upon to respond in punitive damages even if the language of the insurance contract authorizes such payment (note, 63 Col. L. Rev. 944 [1963]); and one commentator has stated that in no event should an automobile liability policy be construed as covering liability in punitive damages (Conrad, “ The Economic Treatment of Automobile Injuries ”, 63 Mich. L. Rev. 279, 318 [1964]; contra, Southern Farm Bur. Cas. Ins. Co. v. Daniel, 246 Ark. 849). Accordingly, if punitive damages are in the ease, the question may be raised whether the terms of the policy are discoverable to determine if coverage for the event exists. Turning to the question regarding evidence of wealth it is well settled that the financial condition of the defendant is not a proper subject of inquiry at trial on the issue of compensatory damages (Walsh v. Frankenthaler, 186 App. Div. 62; 13 N. Y. Jur., Damages, § 11). Where punitive damages are sought there is a split of authority in this State regarding admissibility of wealth at trial (14 N. Y. Jur., Damages, § 188 [cases cited]; 1 PJI 2:278, pp. 161-162 [in 1971 Supp.]). The conflict in authority exists at a lower tier in the judicial process and a general rule may not be postulated where one seeks pretrial discovery of a defendant’s wealth (Selwyn v. Korein, N. Y. L. J., Dec. 12, 1969, p. 18, col. 7 [Sup. Ct., Queens County] [obtainable]; Klauber v. S. K. E. Operating Co., 163 Misc. 418 [obtainable]; Wilson v. Onondaga Radio Broadcasting corp., 175 Misc. 389 [not obtainable]; see ann. 27 ALR 3d 1375 “Discovery-Damages-Defendant’s Assets”). To complicate matters further, New York permits apportionment of punitive damages in multiple defendant cases (Raplee v. City of Corning, 6 A D 2d 230; see Krug v. Pitass, 162 N. Y. 154; Latasa v. Aron, 59 Misc. 26). Consequently, it has been held that in joint tort-feasor or vicarious liability matters it is error to inquire into the wealth of one tort-feasor at trial (Goines v. Pennsylvania R. R. Co., 3 A D 2d 307, rearg. den. 4 A D 2d 831; Austin v. Bacon, 49 Hun 386; Freeman v. Manhattan Cab Corp., 1 Misc 2d 601; Ann. 9 ALR 3d 692, 695-700 “Punitive Damages-Financial Worth”). However, these determinations on apportionment do not reach the issue of pretrial disclosure. At bar, plaintiffs do not contend that punitive damages are in the case and the allegations in the complaint may or may not be sufficient to present the issue (cf. Gill v. Montgomery Ward & Co., 284 App. Div. 36, supra; Steward v. Mutual Clothing Co., 195 Misc. 244; Sanders v. Rolnick, 188 Misc. 627 [App. Term, 1st Dept.], affd. 272 App. Div. 803; 14 N. Y. Jur., Damages, §§ 181, 187; 7A Warren’s Negligence, Damages, ,§§ 1.04, 1.07 [g]). Since the point is not properly presented, the court at this timé will not resolve the issue whether pretrial disclosure of insurance policies may be had in actions involving punitive damages.

. Under our contribution legislation (CPLR 1401 [formerly Civ. Prac. Act, § 211-a] ) it was held that an insured may obtain contribution although payment had been made by his insurer (Wold v. Grozalsky, 277 N. Y. 364; Adams v. Book, 244 App. Div. 646; Jones v. All Boro Car Leasing, 67 Misc 2d 567). It has also been held that the right to contribution is not personal to the insured and may be obtained by the insurer (Travelers Ins. Co. v. McLane, 240 App. Div. 939; Harper v. Wayman, 189 Misc. 348; McColl v. Smith, 174 Misc. 1050; Armstrong v. Springer, 43 N. Y. S. 2d 836; contra Hadcock v. Wiggins, 147 Misc. 252; cf. Employer’s Liab. Assur. Corp. v. McCord, 286 N. Y. 254). These latter rulings should remain viable under the new apportionment procedure. Consequently, insurers for cotort-feasors have a very real interest in knowing policy limits prior to trial so as to effectuate settlements on a percentage basis and to determine the manner of their defense. Furthermore, the new apportionment rules may have modified former practice regarding vouching in and perhaps an active tort-feasor may now vouch in other active tort-feasors (cf. Knippenberg v. Lord & Taylor, 193 App. Div. 753; Henriquez v. Mission Motor Lines, N. Y. L. J., Jan. 4,1973, p. 18, col. 2 [Sup. Ct., N. Y. County] ). Assuming this to be true, neither the voucher nor vouchee can realistically evaluate the consequence of the vouching in the absence of knowledge of each other’s coverage. The voucher can apply to the court for discovery and inspection against nonparties (CPLR 3120, subd. [b]) and seemingly the vouchee would have sufficient status in the action to also obtain discovery (cf. Matter of Culver Contr. Corp. v. Humphrey, 268 N. Y. 26). These exotic questions are not before the court but in view of the changes in the law regarding multiple party defendants it is anticipated that such matters will arise and it is relevant that pretrial discovery issues will of necessity probably be raised at the appropriate times. Nonetheless, directly in point is Bell v. Schuck (285 App. Div. 1204) which held that it was no defense on a motion for contribution that the party seeking contribution failed to settle the matter within policy limits. This holding makes it exceedingly clear that knowledge of insurance limits is a highly relevant matter among cotort-feasors prior to trial.