OPINION OF THE COURT
Dominic R. Massaro, J.
While the "inherent powers doctrine” permits a court to do all things reasonably necessary to further the administration of justice within the ambit of its jurisdiction, the doctrine, by its very nature, is not susceptible to precise definition. On this *520 record, the novel question to be addressed is whether the power can be exercised in the larger framework of directing an agency of government to revise an offending policy which interferes with efficient judicial performance. The conclusion is that it can.
The Facts
For purposes hereinbefore the court, the facts are undisputed: on a given Tuesday during the course of trial, the assigned Assistant District Attorney was directed, on the record and as an officer of the court, to inform two scheduled witnesses, both officers of the New York City Police Department standing outside the courtroom door, to appear on Wednesday morning for the taking of testimony. Upon relaying the court’s directive, the District Attorney was informed by each officer that he would present himself, but only upon receipt of a "notification to appear”. Neither officer appeared on the following day. The court thereupon set forth on the record that it would exercise its contempt power were the officers not to appear on Thursday morning. One of the two officers did so appear; he stated that, in lieu of a subpoena, only upon receipt of a "notification to appear” or direction by a superior officer could his presence in court on any given occasion be assured.
The court invoked the specter of further contempt with respect to the second officer, and directed him on the record to appear on Friday morning; he did not. The District Attorney informed the court that while the second officer’s command acknowledged receipt of its directive, it was unable to satisfy the court inasmuch as it was unable to give "notification” to the officer in question, who, it was reported, had been on scheduled leave since the day following when he was first directed to appear.
Implicated in the instant question of contempt is a Police Department policy that does not distinguish between a court mandate to appear and a District Attorney’s request for a police officer to present himself. This oversight is acknowledged by the Department: "[t]he Police Department procedures do not make an absolute distinction between a direction of the Court and a direction of the District Attorney * * * and, perhaps, that’s an error or omission”.[1]
It is well settled that a superior court of record is authorized by statute to impose sanctions where its lawful mandate is *521 ignored (see, Judiciary Law art 19). No statutory authority is extant, however, to permit review of a nonjudicial agency policy which, as currently understood and applied herein, interferes with the court’s ability to perform efficiently the judicial function for which it is constituted. None is needed; such authority is inherent in the court.
Appearance Control
The notification to appear procedure is part of an over-all Police Department policy promulgated to monitor and control outside appearances by its officers. It has been in place for some time, and was last revised in 1991. Departmental concerns for the allocation of limited financial resources and the effective deployment of strength has seen it negotiate this policy with the office of the District Attorney; the procedure outlined thereunder, which is relied upon by the court, has largely replaced the issuance of a subpoena to compel the appearance of a police witness.
The procedure is initiated with the completion of a "Police Assignment Form” by the District Attorney in connection with a particular case. This form is accompanied by what is a clearly misnamed "Court Assignment Request”. It seeks the presence of a named officer at a given time and on a given date — but not necessarily before the court. The Court Assignment Request may issue for any number of reasons ranging from the early stages of case preparation to a Grand Jury appearance to the giving of testimony at trial. Together these two forms, that is, the Police Assignment Form and the Court Assignment Request, are delivered to the Department’s "Witness Notification Unit” for processing. In turn, the unit notes on the Court Assignment Request the date and time of the request, the requestor and the person at the officer’s command accepting the request form from the unit. At this juncture, a notification to appear in whatever fashion feasible is conveyed by the command to the officer in question. These guidelines are set forth in the Department’s Patrol Guide (see, New York City Police Department Patrol Guide procedure Nos. 114-6, 114-7).
Given this policy, any number of situations suggest themselves to interfere with the ability of an officer to present himself as requested. The usual practice of the Witness Notification Unit not to convey the request to the command until 24 hours before the date set down for the appearance only serves to compound difficulties. Where the officer sought has already completed his tour of duty, cannot otherwise be *522 contacted and whose next tour of duty is to commence at an hour beyond the call of the calendar, as occurred in the instant case, his appearance is impeded. This is but one, albeit glaring, example of how the policy fails to meet its stated goal of maintaining appropriate liaison in service to the court.
It must be remembered that the foregoing is by virtue of a "request” initiated by the District Attorney. By way of contrast, here the court, in lieu of a judicial subpoena, mandated via its own officer the appearance of a witness(es) who, for all intents and purposes, was in its presence. There is no need for equivocation in such circumstances, nor should any be tolerated, particularly in light of an overburdened court system that places high value on the economy of judicial time. Notwithstanding, the officer(s) herein was placed in the unenviable position of either contravening the mandate of the court and subjecting himself to contempt or not following departmental policy and subjecting himself to discipline.
Nor should it go unnoted that the court’s mandate was mindful of the fact that it believed on the Tuesday first uttered that the District Attorney did not have adequate opportunity to pursue attendance of the officer(s) under the extant policy. In fact, a subsequent District Attorney’s request was initiated to no avail.
Inherent Power of the Court
The concept of judicial exercise of inherent power has been recognized in New York from the earliest times (see, Yates v Lansing, 9 Johns 395 [1811]). "[C]ourts of record * * * are vested with inherent powers, which are neither derived from nor dependent upon express statutory authority, and which permit such courts to do all things reasonably necessary for the administration of justice within the scope of their jurisdiction” (Gabrelian v Gabrelian, 108 AD2d 445, 448 [2d Dept 1985]). Derived from the English courts (see, 3 Blackstone Commentaries 296 [1769]), this power was vested in the New York Supreme Court at its creation in 1691 (see, Fowler, Organization of the Supreme Court, 19 ALJ 211 [1879]). The State’s first Constitution of 1777 did not alter this power, and, in fact, specifically provided for the continuation of common-law practice (see, NY Const art XXXV [1777]; see also generally, Galie, Ordered Liberty: A Constitutional History of New York [1996]), as well as " 'vested in [the Supreme Court] a jurisdiction which change of government and constant reforms and revolutions in procedure have been powerless to abridge in any *523 material respect, for while its jurisdiction has been enlarged by its union with the Court of Chancery, its ancient jurisdiction still remains unimpaired’ ” (Matter of Steinway, 159 NY 250, 256 [1899]).
There is a paucity of cases that have subsequently elaborated upon utilization of this power.[2] Commentators suggest that this may result, at least in part, from the extensive body of constitutional and statutory law affecting the judiciary, especially with respect to court administration (see, NY Const art VI). Article 7-A of the Judiciary Law, the enabling legislation for the constitutional imperative, vests broad rule-making authority in the Office of the Chief Judge and the Chief Administrator of the Courts (see, Judiciary Law art 7-A; Uniform Rules for Trial Cts [22 NYCRR] parts 200-216). Indeed, ample administrative machinery of the Unified Court System is in place in furtherance of governance of the court by those charged with management of the judicial system. This governing authority, however, cannot possibly envision or encompass every incidental to a trial court’s charge respecting the handling of a particular case, or the management of a particular trial.
Thus, a court has inherent power to take those reasonable and necessary steps deemed appropriate to enable it to perform efficiently the judicial function for which it has been constituted, that it protects its dignity and integrity, including, to be certain, giving force and effect to its lawful actions (see, Matter of People v Little, 89 Misc 2d 742 [1977], affd 60 AD2d 797 [4th Dept 1977]). Of necessity, this inherent power must be determined on an ad hoc basis. "[T]he exercise of inherent powers may be necessary to enable trial judges to conduct their responsibilities in the course of adjudication. Frequently, statutes, decided cases, court rules, or other authority fail to provide answers to issues that require resolution during the pre-trial, trial, and post-trial phases of a case. In such 'gray area’ situations, supreme courts have held uniformly that trial courts possess inherent powers as a part of the common law tradition to fill the gaps of express law and to respond to problems, especially evidentiary and procedural, that come up in carrying out their adjudicative duties. Trial judges therefore *524 rely on inherent powers when necessary to fashion rules and create procedures so that the adjudicative process can function” (Stumpf, Inherent Power of the Court, National Judicial College, at 37 [1994]).
Central to this charge is the power to summon witnesses and compel their attendance that allows a court to manage and exercise control of its calendar. Only in this manner can it conduct proper, expeditious and just trials. "It is ancient and undisputed law that courts have an inherent power over the control of their calendars, and the disposition of business before them”. "Indeed, a statute which would impose a mandate upon the court in the otherwise discretionary handling of time of trial is unconstitutional” (Plachte v Bancroft Inc., 3 AD2d 437, 438 [1st Dept 1957]).
Conclusion
There being no available remedy by statute, and the imposition of a monetary sanction in furtherance of the court’s contempt power appearing inappropriate under the given circumstances as against the officer(s) herein, sound policy considerations dictate the compelling necessity for the New York City Police Department to revise its policy to forestall continued difficulties, notwithstanding the merits of its posture in seeking "to reduce [the unnecessary] appearances of a uniformed member of the service in court on his scheduled day off” to avoid the payment of overtime (New York City Police Department Patrol Guide procedure No. 114-6). This revision should reflect a clear understanding that a mandate to appear issued by a court is in sharp contrast to a departmental policy that awaits a District Attorney’s request form.
It is a cardinal principle of good public administration that cooperation between the branches of government is the most practicable means for establishing procedures which, in this instance, will provide an effective mechanism for balancing the stated needs of the Department with the necessity for the court to act in an efficient manner. Otherwise constraining itself from the imposition of a judicial remedy (or, in the alternative, henceforth sua sponte determine to set at naught so much of the policy that offends and simply and quite properly revert to the subpoena for all scheduled police witnesses at the commencement of every trial), the court invites the Department to consult as it best sees fit and submit forthwith for review an appropriately revised policy declaration.

. Transcript of proceedings, at 17, 1.18; at 18, 1.1.

. Absent express legislative authority to sanction, the enumeration of various instances where the inherent power has traditionally been invoked includes calendar control, case assignment, rule promulgation, the provision for supportive services and where the court corrects its own mistake or error (see, Gabrelian v Gabrelian, 108 AD2d 445 [2d Dept 1985], supra).