*842 OPINION OF THE COURT
Thomas Rainbow Morse, J.
Body Camera Scheduling Order
In the wake of increased public concern over police-citizen interactions, many communities, including Rochester, have received funding to purchase and implement policies regarding the use of body cameras by police officers.[2] As those efforts continue and the existence of relevant digital images becomes more commonplace, the widespread use of such technology exposes fiscal, logistical and legal issues which need to be resolved to take full advantage of the promise of the legislation and protect the rights of all parties.[3] Although “[flootage from body cameras may help both prosecutors and defense attorneys by providing objective evidence relating to whether a confession was voluntary, a search was consented to or justified, or a physical description matched a lookout,”[4] across the country law enforcement budgets are being strained by the personnel costs associated with storage, retrieval and transmission of the images produced.[5]
Practical Consideration
In a number of cases recently before this court, defense counsel has sought adjournment of an already scheduled pretrial hearing due to the inability to review body camera footage before commencing cross-examination of prosecution witnesses. Thus, this court has entertained suggestions from both the prosecutor and a public defender assigned to this court regarding pretrial production of digital recordings from body cameras worn by members of law enforcement during the course of the investigation leading to or as part of criminal actions presently pending.[6]
*843 If the People intend to introduce body camera footage at trial, then the recordings are certainly discoverable pursuant to CPL article 240 in misdemeanor and felony cases.[7] Also, timely production of body camera video might place the parties and the court in a better position to assess whether a good faith basis exists upon which to move to suppress evidence premised on alleged Fourth Amendment violations.[8] In addition, to the extent that they encompass the subject matter of a witness’s direct testimony at a pretrial hearing, the digital recordings may constitute Rosario material.[9] Moreover, if the People have reviewed such footage and have no present intention to use it at trial, counsel for a defendant might be able to *844 successfully assert that the videotape constitutes Brady[10] material which, at the very least, should be provided to and reviewed by the trial judge pending such a determination.[11] The reasoned exercise of discretion regarding a number of those issues could result in significant delays in each proceeding and additional public expense caused by having to recall police witnesses on a subsequent day to be cross-examined once the digital footage has been reviewed. Alternatively, if the hearing were to proceed without the benefit of the tape, the court may need to consider other forms of relief.[12] Either scenario should *845 be avoided if at all possible.[13]
Calendar Control—A Trial Judge’s Inherent Powers
The Court of Appeals has recognized “the detrimental effects that congestion and backlog in our State’s courts can have upon the administration of justice.”[14] Given the circumstances outlined above, this court finds it appropriate to consider a prehearing/pretrial scheduling order which will apply to all future criminal actions which involve the use of such digital materials. In doing so, this court recognizes New York’s “strong public policy to further orderly trial procedures and preserve scarce trial resources.”[15] While the Chief Judge is constitutionally empowered to promulgate rules which apply to all trial courts exercising criminal jurisdiction,[16] “[i]t is ancient and undisputed law that courts have an inherent power over the control of their calendars, and the disposition of business before them, including the order in which disposition will be made of that business.”[17] A judge must protect a defendant’s constitutional and statutory rights to a speedy trial as well as the *846 expectation of all parties and the public that the courts will ensure constitutional due process.
Conclusion
Courts should generally “defer to the Legislature in matters of policymaking . . . [and usually] have neither the authority . . . the ability, nor the will, to micromanage”[18] societal choices such as law enforcement use of body cameras. Nonetheless, judges are “well suited to interpret and safeguard constitutional rights and review challenged acts of our co-equal branches of government—not in order to make policy but in order to assure the protection of constitutional rights.”[19] One of the ways courts can fulfill this obligation is to have and adhere to meaningful calendar control benchmarks which measure success recognizing that “hope charts the future [and] vigilance protects it.”[20]
While constitutional and statutory provisions provide support for administrative supervision of the judicial system,[21] such governing authorities cannot possibly envision every action incidental to a trial court’s responsibility respecting the handling of a particular case.[22] Of necessity, the inherent power of trial judges must often be determined on an ad hoc basis. The emergence of the widespread use of body cameras by law enforcement and ubiquitous cell phone filming of citizen-police encounters by members of the public necessitates this court’s exercise of such inherent powers.
*847 After due deliberation and careful consideration it is hereby held that this scheduling order will apply to all cases pending before this court in which pretrial hearings or trials will be scheduled through December 31, 2019. And it is further held that failure to comply with the orders issued today may result in application of alternatives provided for in Criminal Procedure Law § 240.70. And it is further ordered that prior to the court scheduling a pretrial factual hearing, bench or jury trial in a criminal action in which prosecutors and/or law enforcement authorities have photographic or digital still or video images relevant to the matters then under consideration, the prosecution must comply with the mandates of Criminal Procedure Law § 240.20 (1) (g).[23] And it is further ordered that prior to the court scheduling a pretrial factual hearing, bench or jury trial in a criminal action in which defense counsel and/or potential witnesses for the defense have photographic or digital still or video images relevant to the matters then under consideration, defense counsel must comply with the mandates of Criminal Procedure Law § 240.30 (1) (b).[24] And it is further ordered that prior to the court scheduling a pretrial factual hearing, bench or jury trial in a criminal action in which par *848 ties or potential witnesses have photographic or digital still or video images relevant to the matters then under consideration the court will require all counsel involved in the particular criminal action to place on the record the extent of their due diligence in obtaining such materials and providing them to opposing counsel as may be required by law.

. Developments in the Law—Considering Police Body Cameras, 128 Harv L Rev 1794, 1795 (2015); see also Mary D. Fan, Justice Visualized: Courts and the Body Camera Revolution, 50 UC Davis L Rev 897, 935 (2017).

. On January 23 of this year, a bill was proposed in the New York State Assembly relating “to the discoverability of recordings found on police body cameras and vehicle cameras.” 2017 New York Assembly Bill A02825.

. Developments in the Law—Considering Police Body Cameras, 128 Harv L Rev 1794, 1803 (2015) (internal quotation marks omitted).

. Id. at 1809 (“some departments have already spent hundreds of thousands or even millions of dollars managing their data”).

. This decision focuses on defendants who may have had portions of their police investigations or arrests videotaped by law enforcement body *843 cameras. Obviously, the thrust of this ruling may also apply to car mounted, pole positioned or precinct videotaping relating to these criminal actions as well as similar privately produced recordings which are secured by police or prosecutors. Should defendants or defense counsel wish to introduce any such digital representations produced by them or private citizens at pretrial hearings or trial, they must also provide reciprocal discovery as required by law. See CPL 240.10 (3); 240.20 (1) (g); 240.30 (1) (b).

. Putting aside constitutional guidelines, pretrial discovery is clearly a statutory creation which does not apply to petty offenses which charge only a violation level offense or non-criminal traffic infraction. See CPL 240.20 (1); 1.20 (39). In addition, because statements of the defendant made “in the course of the criminal transaction” are specifically exempted from the discovery statute, many of the statements made by a defendant recorded on the body camera may not be discoverable. CPL 240.20 (1) (a).

. Compare People v Mendoza, 82 NY2d 415, 422 (1993) (“Hearings are not automatic or generally available for the asking by boilerplate allegations. Rather . . . we conclude that factual sufficiency should be determined with reference to the face of the pleadings, the context of the motion and defendant’s access to information” [emphasis added]), with People v Jones, 95 NY2d 721, 728 (2001) (“In this case, there had been no disclosure on the part of the People, by either voluntary discovery or otherwise, of the description radioed by the purchasing officer to the arresting officer. Because it would be unreasonable to construe the CPL to require precise factual averments when defendant does not have access to or awareness of the facts necessary to support suppression, the absence of any factual allegations with respect to the description conveyed to the arresting officer cannot be held against defendant” [citations, internal quotation marks and some punctuation omitted]).
A pair of federal cases involving body camera and video evidence are also instructive on the issue of “good faith basis.” See Scott v Harris, 550 US 372, 380-381 (2007) (“the Court . . . should have viewed the facts in the light depicted by the videotape”); Addona v D’Andrea, 2016 WL 5107054, 2016 US Dist LEXIS 126896 D Conn, Sept. 19, 2016, No. 3:14-CV-01757 (WWE) (body camera).

. People v Rosario, 9 NY2d 286 (1961). The CPL requires production of “[a]ny . . . recorded statement. . . made by such witness . . . which relates to the subject matter of the witness’s testimony.” CPL 240.44 (1). The same essential provisions apply to both parties at time of trial. CPL 240.45 (1) (a); (2) (a).

. Brady v Maryland, 373 US 83 (1963). As noted by Mr. Justice Marshall in United States v Bagley, 473 US 667 (1985) (Marshall, J., in dissent),
“[t]o implement Brady, courts must of course work within the confines of the criminal process. Our system of criminal justice is animated by two seemingly incompatible notions: the adversary model, and the state’s primary concern with justice, not convictions. Brady, of course, reflects the latter goal of justice, and is in some ways at odds with the competing model of a sporting event. Our goal, then, must be to integrate the Brady right into the harsh, daily reality of this apparently discordant criminal process.” Id. at 696; see also People v Hunter, 11 NY3d 1 (2008).
As the Court of Appeals noted in People v Geaslen, “where . . . there is in the possession of the prosecution evidence of a material nature which if disclosed could affect the ultimate decision on a suppression motion, and that evidence is not disclosed, such nondisclosure denies the defendant due process of law.” 54 NY2d 510, 516 (1981).

. Geaslen at 516. The duty to provide constitutionally compelled material pursuant to CPL 240.20 (1) (g) is a continuing one. CPL 240.60.

. As to sanctions for failure to produce body camera tapes which are in existence, CPL 240.70 (1) provides that if
“the court finds that a party has failed to comply with any of the provisions of this article, the court may order such party to permit discovery of the property not previously disclosed, grant a continuance, issue a protective order, prohibit the introduction of certain evidence or the calling of certain witnesses or take any other appropriate action.”
This order focuses on the obligation to produce discovery, not spoilation. As to the latter, it should be noted that the
“nonwillful, negligent loss or destruction of Rosario material does not mandate a sanction unless the defendant establishes prejudice. If prejudice is shown, the choice of the proper sanction is left to the sound discretion of the trial judge, who may consider the degree of prosecutorial fault. The focus, though, is on the need to eliminate prejudice to the defendant.” People v Martinez, 22 NY3d 551, 567 (2014) (citations omitted).
For instance, the Court of Appeals has noted that
“the trial court typically must issue an adverse inference charge as a penalty where the State, through its agents, has destroyed *845 existing material evidence in its possession, such as an existing video recording that has been requested by the defense. And, where the State violates its disclosure obligations, an adverse inference charge, and sometimes more severe penalties, are authorized.” People v Durant, 26 NY3d 341, 347 (2015) (emphasis added; citations omitted).

. While this court’s opinion will not further address the respective ethical responsibilities of the parties regarding body camera footage, the Fourth Department had an opportunity to do so. See Matter of Bissell, 141 AD3d 150, 152 (4th Dept 2016) (“Respondent admits that, had he viewed the body camera video recording prior to the Huntley hearing, he would have known that one of the deputies had issued Miranda warnings to the client and that the client had made the alleged threats to the deputies”).

. People v Davis, 13 NY3d 17, 29 (2009).

. People v Lawrence, 64 NY2d 200, 207 (1984). As noted in one local case, “[i]nherent judicial powers derive not from legislative grant or specific constitutional provision, but from the fact it is a court which has been created, and to be a court requires certain incidental powers in the nature of things.” Matter of People v Little, 89 Misc 2d 742, 745 (Yates County Ct 1977, Dugan, J.) (citation omitted), affd 60 AD2d 797 (4th Dept 1977). See also People v Green, 170 Misc 2d 519 (Sup Ct, Bronx County 1996, Massaro, J.), which thoroughly traces New York common-law antecedents of this integral power to Blackstone’s Commentaries.

. NY Const, art VI, § 28; see also 22 NYCRR 200.1 et seq.; UCCA 2001.

. Plachte v Bancroft, Inc., 3 AD2d 437, 438 (1st Dept 1957) (“this power exists independently of statute. Indeed, a statute which would impose a mandate upon the court in the otherwise discretionary handling of time of trial is unconstitutional” [citations omitted]). These words written in a civil case seem pertinent to criminal cases as well.

. Campaign for Fiscal Equity v State of New York, 100 NY2d 893, 925 (2003). Certainly, “enforcement of a clear constitutional or statutory mandate is the proper work of the courts.” Hurrell-Harring v State of New York, 15 NY3d 8, 26 (2010).

. Campaign for Fiscal Equity at 931.

. Israeli Prime Minister Benjamin Netanyahu, Remarks During General Debate of the 68th Session of the United Nations General Assembly (Oct. 1, 2013).

. Article 7-A of the Judiciary Law, the enabling legislation for the constitutional imperative, vests broad rule-making authority in the Office of the Chief Judge and the Chief Administrator of the Courts. See Judiciary Law art 7-A; Uniform Rules for Trial Courts (22 NYCRR) parts 200-221; see also Bennett L. Gershman, Supervisory Power of the New York Courts, 14 Pace L Rev 41 (1994).

. See Little and Green. A number of cases clearly limit the contours of a court’s inherent power to control calendars. Compare People v Douglass, 60 NY2d 194, 200 (1983) (it was an abuse of judicial discretion to “dismiss for failure to prosecute”), with Lawrence at 207 (a court may not consider a pretrial speedy trial motion once trial commences), and Matter of Veloz v Rothmax, 65 NY2d 902, 903 (1985) (it was an abuse of judicial discretion “to shorten the statutory time period in which to make pretrial motions”).

. Our highest court has noted that
“[t]he criminal discovery procedure embodied in article 240 . . . evinces a legislative determination that the trial of a criminal charge should not be a sporting event where each side remains ignorant of facts in the hands of the adversary until events unfold at trial. Broader pretrial discovery enables the defendant to make a more informed plea decision, minimizes the tactical and often unfair advantage to one side, and increases to some degree the opportunity for an accurate determination of guilt or innocence. In short, pretrial discovery by the defense and prosecution contributes substantially to the fair and effective administration of justice.” People v Copicotto, 50 NY2d 222, 226 (1980) (citations omitted).

. As noted by the New York Court of Appeals over three decades ago:
“[t]hat the defendant may be required to disclose his defense prior to trial does not render the discovery scheme invalid, for ‘[n]othing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State’s case before announcing the nature of his defense.’ Like the notice-of-alibi rule upheld in Williams, the procedure employed in this case involved no compulsion violative of the Fifth Amendment, for defendants were directed only to accelerate disclosure of information which they apparently intended to disclose at trial.” Copicotto at 229-230 (citations omitted), citing Williams v Florida, 399 US 78, 85 (1970); accord People v Sirmons, 242 AD2d 883, 884 (4th Dept 1997) (noting that Copicotto was decided before the legislature amended CPL article 240 to make *848 it clear that a prosecutor now has an independent right to discovery).